619 So.2d 749 (1993)
The STATE of Louisiana, Through the DIVISION OF ADMINISTRATION, STATE LAND OFFICE
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY.
No. 92-CA-2281.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
*750 Richard P. Ieyoub, Atty. Gen., E. Kay Kirkpatrick, Gary L. Keyser, and Robert H. Carpenter, Jr., Asst. Attys. Gen., Department of Justice, Baton Rouge, for State.
Charles W. Lane, III, Edward H. Bergin, T. Michael Twomey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant/appellant.
Before WARD, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
This appeal presents the sole issue of whether La.R.S. 45:781(A) requires defendant, South Central Bell, to compensate the plaintiff, State of Louisiana, for its allowing South Central Bell the right to place and maintain telephone poles, lines and other systems on public lands. Both parties filed motions for summary judgment because no material facts are in dispute. The trial court found in favor of the State of Louisiana. We reverse and render judgment in favor of South Central Bell.

FACTS:
It is undisputed that South Central Bell and its predecessors have, over many years, constructed and maintained telephone poles and wires on lands owned by the State of Louisiana. Additionally, South Central Bell concedes that it, being a corporation formed in part "for the purpose of transmitting intelligence by ... telephone," is subject to the provisions of La.R.S. 45:781(A). Under this provision, the State filed a petition for declaratory judgment seeking to have the trial court declare whether South Central Bell must compensate the State for the use of the land and waters on which the poles sit and over which the wires cross.
The trial court held that South Central Bell must compensate the State for the use of State lands. The trial court reasoned "that the clear and unambiguous language of La.R.S. 45:781(A) requires South Central Bell to pay the State just compensation for any right of ways whenever its telephone or other lines cross State lands or water bottoms. Additionally, the trial court determined that to allow South Central Bell to use State lands without being required to compensate the State for the right of *751 ways would effectively be a donation of State lands in favor of a private corporation which is in violation of the Louisiana Constitution Article VII, § 14(A). Finally, in support of its conclusions, the trial court determined that State v. Cumberland Telephone and Telegraph Company, 52 La. Ann. 1411, 27 So. 795 (La.1899) is inapplicable to this case.

PRIOR LAW:
In order to foster the development of an affordable communication system in the State of Louisiana, the legislature in 1855 provided the following:
Corporations formed under the laws of this State for the purpose of transmitting intelligence by magnetic telegraph shall have the right of way over all lands owned by the State, and over any highways or navigable waters, but shall so construct their works as not to interfere with, impede or hinder the free use of the highways or navigable waters or the drainage or natural servitudes of the land over which the right of way may be exercised.
La.Acts No. 105, § 1 (1855), La.R.S. Corporations § 16 (1856). The section contains no requirement that the telegraph company compensate the State for the right of way.
In 1880, in order to keep abreast of changes in technology, the legislature passed Act No. 124 to amend La.R.S. § 696 (1870)[1]. The new provision provided:
Corporations chartered or formed under the laws of this or any other State, or under the laws of the United States for the purpose of transmitting intelligence by magnetic telegraph or telephone or other system of transmitting intelligence, the equivalent thereof which may be hereafter invented or discovered, may construct maintain such telegraph, telephone or other lines necessary to transmit intelligence along all State, parish or public roads or public works, and along and parallel to any railroads in the State, and along and over the waters of this State; provided, that the ordinary use of such roads, works, railroads and waters be not thereby obstructed, and along the streets of any city, with the consent of the council or trustees thereof, and such companies shall be entitled to the right of way over all lands belonging to the State and over the lands, privileges and servitudes of other persons and corporations, and the right to erect poles, piers, abutments and other works necessary for constructing, working operating and maintaining their lines and works, upon making just compensation therefor. That in the event such company shall fail, on application therefor, to secure such right by consent, contract or agreement upon just and reasonable terms, then such companies or corporations shall have the right to proceed to expropriate the same, as provided in and by the laws of the State relative to expropriation of lands for railroads and other works of public utility, and shall so construct their works as not to impede or obstruct the full use of the highways, navigable waters, or the drainage or natural servitudes of the land over which the right of way may be exercised. But no company operating under the provisions of this act shall have the power to contract with the owners of land or with any other corporation for the right to erect and maintain any telephone, telegraph or other line for the speedy transmission of intelligence over his or its lands, privileges or servitudes, to the exclusion of the lines of other companies operating under the provisions of this act.
Act No. 124 substantially changed Act No. 105, broadening the scope of the article to include companies providing telephone service as well as "other system[s] of transmitting intelligence" which may be discovered or invented after the enactment of the Act. Additionally, the legislature allowed the right of way to extend to both Louisiana and foreign corporations. The legislature also granted telephone companies the power to expropriate private lands when the companies were unable to reach an agreement with the land owner concerning the right of way. The legislature also *752 included that "such companies shall be entitled to a right of way over all lands belonging to the State and over the lands, privileges and servitudes of other persons and corporations ... upon making just compensation therefor."
In State v. Cumberland, 52 La.Ann. 1411, 27 So. 795 (La.1899) the Louisiana Supreme Court was called upon to interpret Act No. 124 of 1880. In State v. Cumberland the State sought to have defendant, Cumberland Telegraph Company,[2] remove certain poles erected near the New Basin Canal in New Orleans, Louisiana. Additionally, the State sought compensation for the use of the land on which the poles were placed. The trial court dismissed the State's claim. On appeal to the Supreme Court, the suit for the injunction was abandoned and the only issue remaining before the court was whether Cumberland owed compensation to the State for the use of State lands.
The Supreme Court denied the State's request for compensation. In analyzing the Supreme Court's opinion, the Court clearly interpreted Act No. 124 to mean that the State was owed no compensation from Cumberland and that the only true issue was whether the poles interfered with the use of the land, which was prohibited by the statute. This interpretation is evidenced by the Court's syllabus of the case which states "[t]here was no complaint made of interference by defendant company, but a claim of compensation for the use, which is not sanctioned by law."
Additionally, it is unequivocable from the opinion that all sides, including the Supreme Court, were operating under the assumption that Act No. 124 did not provide for compensation to the State from the telephone companies for the use of State lands. This is evidenced by the fact that the State argued vigorously that the land in question was not included in the grant of a right of way over State lands because it was income producing land. The Court dismissed the State's arguments concerning this point finding that the term "State lands" was broad enough to encompass the land at issue in the case. If the construction of the statute allowed for compensation then the State would have argued that the land fell within the purview of the Act and not the contrary. Furthermore, if the Court had interpreted the Act to provide compensation to the State, then a finding that the land in question was included in the Act would have necessitated the Court granting the requested compensation. However, the Supreme Court affirmed the dismissal of the State's suit. Therefore, although the Supreme Court's decision does not explicitly state that Act No. 124 of 1880 did not require Cumberland to compensate the State for the use of its lands, by finding that the land fit within the statute yet still rejecting the State's claim for compensation the Court clearly held that Act No. 124 did not so provide.

THE PRESENT LAW:
The modern language of the present statute can be found in the Revised Statutes of 1950 under title 45 § 781. This provision cites as its source La.R.S. §§ 696, 3760 (1870) and Acts 1880, No. 124, § 1. In 1976, La.R.S. 45:781 was amended and re-acted. Section A of the present 45:781 reads as follows:
Corporations, domestic or foreign, formed for the purpose of transmitting intelligence by telegraph or telephone or other system of transmitting intelligence, may construct and maintain telegraph, telephone or other lines necessary to transmit intelligence along all public roads or public works, and along and parallel to any of the railroads in the State, and along and over waters of the State, if the ordinary use of the roads, works, railroads, and waters of the State are not obstructed, and along the streets of any city, with the consent of the city council or trustees. Such companies, shall be entitled to the right of way over all lands belonging to the State and over the lands, privileges and servitudes of *753 other persons, and to the right to erect poles, piers, abutments, and other works necessary for constructing and maintaining lines and works, upon making just compensation therefor. If the company fails to secure such right by consent, contract or agreement upon just and reasonable terms, then the company has the right to proceed to expropriate as provided by law for railroads and other works of public utility, but shall not impede the full use of the highways, navigable waters, or the drainage or natural servitudes of the land over which the right of way may be exercised. No company, operating under the provisions of this Section, shall contract with the owners of land or with any other corporation for the right to erect and maintain any telephone, telegraph or other line for the speedy transmission of intelligence over its lands, privileges or servitudes, to the exclusion of the lines of other companies operating under the provisions of this Section.
Clearly, the language of the present La. R.S. 45:781(A) is virtually identical to the language of Act No. 124 (1880). Additionally, the issue presented to the Supreme Court in State v. Cumberland is also almost identical to the issue presented in the instant case: Whether the telephone company owes compensation to the State for the use of its lands. Therefore, this court finds that the decision of the Supreme Court in State v. Cumberland is controlling and binding on this court.
Our opinion that State v. Cumberland is still controlling is further buttressed by the recent United States Eastern District Court for Louisiana's decision in Broussard v. South Central Bell, 1992 WL 96304 (slip opinion) (E.D.La.1992), wherein the City of Kenner was denied compensation for the use of its streets by South Central Bell for its poles and wires. The District Court stated that State v. Cumberland "held that the expropriation provisions of Act 124 of 1880, quoted supra, and, by implication, the compensation provisions of that Act "refer[ ] to private individuals only." (Slip opinion at 13). The District Court continued by stating that "[s]econd, the city can hardly claim that it has not benefitted in its development from eighty-seven years of telephone service." Id.
We recognize that the Cumberland decision was created in a previous century when social and economic conditions were very different. However, the values, public policies, and ideology that were extant in the 19th century, as demonstrated by the Cumberland decision, continue to be applicable in today's society.
Prior judicial decision are persuasive, but not conclusive since they can be overruled or distinguished. However, adopting a position contrary to an existing decision is inappropriate in the absence of some compelling reason for changing the law. Therefore, we consider ourselves bound by the Cumberland decision in this case since the State has not advanced any acceptable argument convincing this court that a change in the prior Louisiana Supreme Court decision is warranted.
While it is unusual for a 94 year old case to be binding, it is just as unusual for a 94 year old case to be on point in an issue before this court. That we follow the Supreme Court's decision is especially compelling when that case is dealing with an identical issue and has not been overruled or modified in any manner over the years. Therefore, because the language of Act 124 is nearly identical to the language of La. R.S. 45:781(A), relied upon by the State in the instant case, this court is constrained to follow a Supreme Court decision interpreting that language, which is dispositive of the issue in this case.

FUTURE V. PAST COMPENSATION:
The State argues that State v. Cumberland is inapplicable to the instant case because it does not squarely address the issue before this court. The State argues that in State v. Cumberland the State restricted its argument to seeking compensation for past use. Whereas, in the instant case, the State is arguing for compensation for the future use of State lands.
While it is true that the State in State v. Cumberland argued for compensation for past use of State lands, the State in the *754 instant case does not present any valid reason for us to recognize this as a distinction. As noted above, the Court, although not expressly stated, interpreted Act No. 124 to mean that defendant Cumberland could exercise its right of way without paying compensation to the State for the use of its lands so long as the telephone company did not interfere with the State's use of the land. Surely, if compensation was not owed for the use of the State's lands in the past, but was owed for future use, the Court would have limited its holding in this respect. However, our interpretation of State v. Cumberland does not reveal such a limitation. In fact, our reading of the opinion leads us to the conclusion that the Supreme Court was of the opinion that no compensation whatsoever was owed to the State for the use of its lands. Therefore, the distinction posited by the State is without merit.

LOUISIANA CONSTITUTION ART. VII, § 14(A):
Finally, the State argues that to allow South Central Bell to keep it poles and wires on State lands without requiring compensation effectively constitutes a donation to a private corporation in violation of the Louisiana Constitution Article VII § 14(A) which provides that "the ... property... of the State ... shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." The Supreme Court in State v. Cumberland also addressed this argument in relation to Article 56 of the Louisiana Constitution of 1879. Article 56 prohibited the "loan," "pledge," or "grant" to any person, association, or corporation, public or private, of the funds, credit, property, or thing of value to the State. The Court stated that:
The State, as we take it, was not devested of its power to permit the telephone company to use an insignificant portion of her land and to plant its poles and string its wires. It is not a "loan" "pledge," or "grant," as we read the statute, but a mere permission to use for purposes already stated, if the use is not in any manner to the State's prejudice. We have not found that the power of the State is so restrained that it cannot permit a quasi public corporation to string its wires over her lands. If we were to grant plaintiffs' proposition, useful improvements would have to stop at every line dividing private from State land.
27 So. at 797. Thus, it is clear that the Court addressed this argument and found it to be lacking.
The State argues, however, that the granting of a "right of use" without requiring compensation is sufficient to constitute a donation of State property because it is a relinquishment of the State's power and control over that portion of property. This argument misconstrues the extent of the grant afforded to the defendants and the effect of a donation.
First, the State, as noted by the Supreme Court has not given up its control over the land. In fact, the legislature has expressly provided that telephone poles and wires may not obstruct "the ordinary use of the roads, works, railroads, and waters." Thus, it is clear that the State still retains the use of the lands on which the telephone equipment sits. Additionally, there is no doubt that the State retains all other ownership rights as to the lands under consideration vis-a-vis South Central Bell.
Second, La.C.C. art. 1468 provides that a donation "is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it." Clearly, as noted, the State has not divested itself of the land irrevocably. It still retains all ownership rights over the land except the right of use granted to telephone companies. Therefore, because the State still retains full ownership of the land used by South Central Bell, it cannot claim that the land has been donated in violation of Article VII, § 14(A) of the Louisiana Constitution.

CONCLUSION:
Accordingly, the decision of the trial court declaring that La.R.S. 45:781(A) requires South Central Bell to compensate the State for use of its lands is reversed. Judgment is rendered in favor of the defendant South Central Bell against the plaintiff, *755 the State of Louisiana, dismissing its suit with prejudice.
NOTES
[1] La.R.S. Corporations § 16 was redesignated La.R.S. § 696 (1870).
[2] Cumberland Telegraph and Telephone Company is the predecessor in right to South Central Bell.