[No. 30896. Department Two. March 10, 1949.]

THE STATE OF WASHINGTON, *on the Relation of the City of Tacoma, Plaintiff*, v. J. V. ROGERS, *as Director of the Department of Conservation and Development, Respondent.* [1]

*Clarence M. Bogle, Dean Barline,* and *E. K. Murray,* for relator.

*The Attorney General* and *C. John Newlands, Assistant,* for respondent.

GRADY, J.—The state of Washington, on the relation of the city of Tacoma, filed a petition in this court praying that there be issued an alternative writ of mandate directed to Frank A. Stewart, as director of conservation and development of the state of Washington, commanding him forthwith to issue permits to the city of Tacoma to appropriate and store waters of the Cowlitz river in the county of Lewis, state of Washington, pursuant to applications made therefor, or to show cause in this court at a time to be fixed by the court why he should not be directed and compelled to do so.

[1] Reported in 203 P. (2d) 325.

On January 17, 1949, this court issued an alternative writ and made it returnable on February 11, 1949. After the alternative writ was issued, J. V. Rogers became director of the department of conservation and development, and by order of the court made on January 24, 1949, he was substituted as respondent. A written return to the alternative writ of mandate was made by the respondent on January 25, 1949. On January 28, 1949, the relator filed an amended petition for a writ of mandate to be directed to J. V. Rogers, as director of the department of conservation and development, seeking the same relief as prayed in the original petition, and an amended alternative writ was issued, returnable on February 11, 1949. A written return was made by the respondent to the amended writ of mandate.

The record before us shows that the objective of the city of Tacoma is the construction of two dams across the Cowlitz river, one near Mayfield and the other near Mossyrock, in Lewis county. The former dam would be one hundred fifty feet in height, and the latter approximately three hundred fifty feet. In furtherance of its objective, the city of Tacoma acquired permits issued by the department of conservation and development to construct the dam near Mayfield, to divert thirty-three hundred cubic feet of water per second of time from the Cowlitz river, and to store seventy-five thousand acre-feet of water.

The city of Tacoma filed with the department of conservation and development applications calling for the construction of the dam near Mossyrock to divert from the Cowlitz river thirty-five hundred cubic feet of water per second of time and to store approximately 1,200,000 acre-feet of water, and had received a preliminary permit for the purpose of allowing exploratory work under the applications. Subsequent to the filing of the application, the city of Tacoma filed an amended application calling for an increase in the height of the dam, the amount of water to be diverted, and the amount to be stored.

Up to the time of the filing of the amended petition for the alternative writ of mandate, the city of Tacoma had ex-

pended a large sum of money in exploration work, surface investigations, studies, and reports. The director of conservation and development held hearings upon the applications of the city of Tacoma, and, on January 4, 1949, made and filed written findings of fact in relation thereto, but did not issue the permits requested by the original or amended applications. He stated at the conclusion of his written findings "that issuance of said permits is therefore deferred pending results of legislative action  . . ."

After the 1949 legislature convened on January 10, 1949, a bill was introduced in the Senate which became known as senate bill No. 4. This bill was passed by the House of Representatives February 8, 1949, and by the Senate on February 9, 1949.

During the argument before this court February 11, 1949, upon the petition for a writ of mandate, our attention was called to the pending legislation and its then status. On February 14, 1949, the enactment was approved by the governor. The act contains an emergency clause and becomes effective April 1, 1949, and is now identified as chapter 9 of the Laws of 1949, p. 38. The act reads as follows:

"An Act Relating to the protection of anadromous fish life in the rivers and streams tributary to the lower Columbia River and declaring an emergency.

"Be It Enacted by the Legislature of the State of Washington:

"Section 1. All streams and rivers tributary to the Columbia River downstream from McNary Dam are hereby reserved as an anadromous fish sanctuary against undue industrial encroachment for the preservation and development of the food and game fish resources of said river system and to that end there shall not be constructed thereon any dam of a height greater than twenty-five (25) feet that may be located within the migration range of any anadromous fish as jointly determined by the Director of Fisheries and the Director of Game, nor shall waters of the Cowlitz River or its tributaries or of the other streams within the sanctuary area be diverted for any purpose other than fisheries in such quantities that will reduce the respective stream flows below the annual average low flow, as delineated in existing or future United States Geological Survey reports: *Provided*, That when the flow of any of the streams

referred to in this section is below the annual average, as delineated in existing or future United States Geological Survey reports, water may be diverted for use, subject to legal appropriation, upon the concurrent order of the Director of Fisheries and Director of Game.

"Sec. 2. It shall be the duty of the Director of Fisheries and the Director of Game, to acquire and abate any dam or other obstruction, or to acquire any water right which may have become vested on any streams or rivers tributary to the Columbia River downstream from McNary Dam which may be in conflict with the provisions of section 1 herein. Any condemnation action necessary under the provisions of this act shall be instituted under the provisions of chapter 120, Laws of 1947, and in the manner provided for the acquisition of property for public use of the state.

"Sec. 3. The provisions of this act shall not apply to the waters of the North Fork of the Lewis River, nor the White Salmon River (Big White Salmon River).

"Sec. 4. This act is necessary for the immediate support of the government of the State of Washington and its existing public institutions, and shall take effect April 1, 1949.

"Passed the Senate February 9, 1949.

"Passed the House February 8, 1949.

"Approved by the Governor February 14, 1949."

The record before us and those facts of which we must take judicial notice make it clear that the Cowlitz river is tributary to the lower Columbia river and is within the reserved area prescribed by the act; that the proposed dam for the construction of which a permit from the department of conservation and development is sought would be across the Cowlitz river and would be of a height greater than twenty-five feet; that on and after April 1, 1949, it will be unlawful to construct the proposed dam across the Cowlitz river near Mossyrock, unless the director of fisheries and the director of game jointly determine that such location is not within the migration range of any anadromous fish. We believe we are justified in assuming that a dam of the magnitude of the one proposed could not be constructed by April 1, 1949.

The court realizes that events in this case have moved rapidly and both the parties and the court are now confronted with a much different situation than existed when

the application for a writ of mandate was made, but our decision must be based upon the situation as we now find it to be. If we grant the application of relator, the writ of mandate would direct the issuance of a permit by the respondent authorizing the construction of a dam of a height greater than twenty-five feet. On and after April 1, 1949, such construction would be unlawful, unless there is a joint determination made by the director of fisheries and the director of game that the dam site is not within the migration range of any anadromous fish. The relator would have a permit to construct a dam, but would be unable lawfully to proceed with its construction on and after April 1, 1949. Neither the order or judgment of the court nor the permit issued pursuant thereto could have any operative force or effect.

■ Assuming, without deciding or intimating any opinion thereon, that the findings of fact made by the director of conservation and development were such that it became his duty to have issued the permit requested when the findings of fact were made, we are of the opinion that, by reason of chapter 9 of the Laws of 1949 becoming effective April 1, 1949, we should not compel the respondent by writ of mandate to issue the permit requested by the city of Tacoma.

This court has uniformly held that it will not compel by mandamus the doing of an act that would serve no useful purpose, nor should a writ issue when by operation of law a compliance with the mandate could have no operative effect. Our research has not disclosed any case in which the precise situation we have before us has been considered, hence a citation of cases applying general principles of law with reference to compelling a public officer to perform some official act would be of no benefit.

We have not overlooked the argument of relator in its brief and orally before the court to the effect that the issuance of the permit is necessary to properly protect it in the matter of compensation should the legislature see fit to pass the proposed act, as otherwise, if the act was passed, the state might assume the uncertainty created would be sufficient to bar relator from going ahead and take no steps

whatever to compensate relator for its rights. It is our opinion that this question is not properly before the court and cannot be considered in determining whether or not the writ applied for should issue. The only question before the court is whether a writ of mandate should issue compelling the director of the department of conservation and development to issue a permit authorizing the city of Tacoma to construct a dam across the Cowlitz river.

The question of whether the location of the proposed dam would be within the migratory range of any anadromous fish not having been determined, we shall dismiss the petition for a writ of mandate without prejudice, and it is so ordered.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.