[No. 31390.   Department Two.   August 22, 1950.]

THE STATE OF WASHINGTON, *Appellant,* v. BESS E. GILROY, *Respondent.*[1]

*Charles O. Carroll, Stuart G. Oles,* and *Robert H. Van Eaton,* for appellant.

*Meier & Murray,* for respondent.

[1]Reported in 221 P. (2d) 549.

HILL, J.,—The state appeals from an order sustaining a demurrer to both counts of an information and dismissing the same.

By count I it was charged that Bess E. Gilroy wilfully and unlawfully carried on the work of caring for children and adults and placing children for care without having a certificate of approval. This charge is based upon the Laws of 1933, chapter 172, § 5, p. 658 (Rem. Rev. Stat. (Sup.), § 10802-4), which reads as follows:

"Any agency, society, association, institution or person, whether incorporated or unincorporated, and the individual or individuals acting for or in its name, who shall hereafter carry on the work of caring for children, or children and adults, or of placing children for care, without a certificate of approval from the director of business control, or who shall wilfully fail or refuse to report as required by said director, or shall wilfully obstruct or hinder him or his agents in inspection or investigation of the agencies, societies, associations, institutions, or persons under their control or charge, shall be guilty of a misdemeanor."

By count II it was charged that Bess E. Gilroy had placed an infant "in a family home for adoption prior to the time an order of relinquishment had become final." This charge is based upon the Laws of 1935, chapter 150, § 4, p. 477, as amended by the Laws of 1939, chapter 162, § 2, p. 486 (Rem. Rev. Stat. (Sup.), § 1700-4 [P.P.C. § 358-7]):

"No licensee of a maternity hospital, physician, midwife or nurse or any other person shall undertake directly or indirectly to dispose of infants by placing them in family homes for adoption or otherwise, until after the order of relinquishment shall become final. . . ."

We will consider count II first, as the portion of the appeal dealing with it can be disposed of very briefly.

The question presented is whether, since the enactment of the Washington state adoption act (Laws of 1943, chapter 268, p. 828), an order of relinquishment is necessary when a child is placed in a family home for adoption.

The appellant is content with saying:

"Appellant simply relies on Chapter 150, Laws of 1935. . . . The information is substantially in the words of

that enactment, and the legislature has never repealed the same. The demurrer therefore should have been overruled unless a repeal by implication is found. See *State v. Chamberlain,* 132 Wash. 529. The respondent's argument for repeal by implication is well summarized in a comment found in 23 Wash. Law Rev. 354. Appellant simply points out that repeals by implication are not favored in this jurisdiction. *State v. Cross,* 22 Wn. (2d) 402, 405."

██ We are not averse to independent research, but we do not feel called upon to make the detailed analysis of the statutes necessary to establish that the trial court erred (if it did) in sustaining the demurrer to count II, without some indication that the appellant is making a serious contention on that point. We do not regard the foregoing quotation from appellant's brief as constituting an argument within the purview of the rule that an assignment of error will not be considered when no argument is made thereon. *Bleyhl v. Tea Garden Products Co.,* 30 Wn. (2d) 447, 460, 191 P. (2d) 851; *Boyle v. Lewis,* 30 Wn. (2d) 665, 678, 193 P. (2d) 332.

We turn now to count I. Respondent urges that the demurrer was properly sustained for four reasons: (1) Chapter 172 of the Laws of 1933 violates Art. II, § 19 of the state constitution, in that it embraces more than one subject; (2) chapter 172, Laws of 1933, violates Art. II, § 19 of the constitution, in that the subjects of the act are not expressed in the title; (3) § 3 (1) of chapter 172, Laws of 1933, applies only to corporations; and (4), if § 3 (1) of chapter 172, Laws of 1933, applies to individuals caring for children, the standards laid down are so indefinite that they leave the entire matter of the issuance of certificates of approval to the sole and uncontrolled discretion of the director of social security, and, consequently, it constitutes an unlawful delegation of legislative power.

The arguments of the respondent in support of all four reasons are cogent, and the criticisms against the title of chapter 172 of the Laws of 1933 and the wording of § 3 (1) thereof should be obviated in the drafting of any new legislation on the subject matter involved. But we find it

unnecessary to pass upon the first three of the reasons assigned, because we are convinced—as was the trial court—that there can be no escape from the conclusion that chapter 172 of the Laws of 1933 unlawfully delegated legislative power to the director of business control, which power has by subsequent amendments been transferred to the director of social security.

By that act the certificate of approval, the absence of which is the basis of the charge in count I, is to be

". . . issued by said director upon reasonable and satisfactory assurance upon the following points:

"(a) The good character and intentions of the applicant;

"(b) The present and prospective need of the service intended by the proposed organization, with no unnecessary duplication of approved existing service;

"(c) Provision for employment of capable, trained or experienced workers;

"(d) Sufficient financial backing to insure effective work;.

"(e) The probability of permanence in the proposed organization or institution;

"(f) That the methods used and the disposition made of the children will be in their best interests and that of society;

"(g) Articles of incorporation and related by-laws;

"(h) That in the judgment of the director the establishment of such an organization is necessary and desirable for the public welfare." Laws of 1933, chapter 172, § 3 (1), p. 656.

█ The Washington constitution, Art. II, § 1, vests the legislative power in the Senate and House of Representatives. What Chief Justice Hughes said in *Panama Refining Co. v. Ryan,* 293 U. S. 388, 421, 79 L. Ed. 446, 55 S. Ct. 241, concerning the national legislature, is equally applicable to the state legislature. We quote:

"The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexi-

bility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility. But the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained."

Mr. Justice Cardozo, who dissented, conceded that

". . . to uphold the delegation there is need to discover in the terms of the act a standard reasonably clear whereby discretion must be governed."

In the *Panama Refining Co.* case, *supra,* and in *Schechter Poultry Corp. v. United States,* 295 U. S. 495, 79 L. Ed. 1570, 55 S. Ct. 837, 97 A. L. R. 947, are found a detailed discussion and an explanation of the distinction between valid and invalid regulatory legislation. The principle is therein laid down that a law is invalid when the authority delegated leaves the regulatory or enforcement agency with unguided and unrestricted discretion in the assigned field. Stated affirmatively, the method of regulation by delegation of authority is subject to the limitation that the law providing for the delegation must also prescribe an accompanying rule of action or lay down a guide or standard whereby the exercise of discretion may be measured. *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 643, 82 P. (2d) 120; *Ferretti v. Jackson,* 88 N. H. 296, 188 Atl. 474, 478.

With these rules in mind, we will look at the guide or standard by which the exercise of the discretion of the director of social security in issuing certificates of approval for those engaged in caring for or placing children for care is measured.

Under (a), he must be satisfied of the "intentions" of the applicant. There is no indication of what those intentions are or should be; the director is the sole judge of what are desirable and undesirable "intentions." We can conceive of few requirements more susceptible to the individual whim, caprice, and personal prejudice of a director.

Under (c), he must be satisfied with the "Provision for employment of capable, trained or experienced workers." The differences of opinion between the various social agencies in the field of child care as to what constitutes capable or trained workers suggests that different directors might have widely divergent views on that subject. The statute does not say in what things the worker must be capable, trained or experienced.

A statute providing for the issuance of licenses to steam engineers if they were found to be "trustworthy and competent" was held to be void, as an unconstitutional delegation of the legislative authority:

"By this section the examiner is made the exclusive judge as to whether an applicant is trustworthy and competent. No standard is furnished by the general assembly as to qualification, and no specifications as to wherein the applicant shall be trustworthy and competent, but all is left to the opinion, finding and caprice of the examiner. He is the autocrat with unlimited discretion, without rules prescribing the qualifications of applicants for license, only so that he finds them trustworthy and competent." *Harmon v. State,* 66 Ohio 249, 252, 64 N. E. 117, 58 L. R. A. 618.

The director is to be satisfied, under (d), that the applicant has "Sufficient financial backing to insure effective work." Again there are no criteria as to what the legislature regards as "effective work," and the director is the sole judge of what constitutes "effective work" and "sufficient financial backing."

In *Marx v. Maybury,* 36 F. (2d) 397, 399, Judge Neterer held that:

"The power given the director of licenses to revoke or withhold permit from a 'Barber School' or 'Barber College' when in his judgment it is not financially able to carry out any contract for instruction, uncontrolled by any standard

or rule or provision of review, is repugnant to the due process clause of the Fourteenth Amendment."

The director must further be satisfied, under (f), that "the methods used and the disposition made of the children will be in their best interests and that of society." There is no legislative declaration of the evils to be avoided or the ends to be attained. It is for the legislature, not the director, to determine what is in the best interests of society.

It remains for (h) to let down the bars, as Mr. Justice Cardozo said in his concurring opinion in the *Schechter Poultry Corp.* case, *supra,* to "delegation running riot." Before an applicant can secure a certificate of approval, the director must be satisfied that the "organization is . . . desirable for the public welfare." This seems to be farming out a bit of the police power to the director, and it is not a sufficient standard for his guidance.

In *State v. Harris,* 216 N. C. 746, 6 S. E. (2d) 854, 128 A. L. R. 658, Harris appealed from a conviction of engaging in the business of dry cleaning without a license. Such licenses were issued by the state dry cleaners commission after examination covering " 'subjects deemed necessary to promote the public health, safety and welfare of the people of the State of North Carolina.' " The court, in holding the licensing provision unconstitutional, said:

"Thus, an unlimited discretion is given to the commission to set up standards of their own for admission to the business of 'dry cleaning and/or pressing,' according to whatever rules or regulations they may conceive to be related to the 'public health, safety, and welfare of the people.'

"In licensing those who desire to engage in professions or occupations such as may be proper subjects of such regulation, the Legislature may confer upon executive officers or bodies the power of granting or refusing to license persons to enter such trades or professions only when it has prescribed a sufficient standard for their guidance. 16 C. J. S., p. 373, and cases cited. Where such a power is left to the unlimited discretion of a board, to be exercised without the guide of legislative standards, the statute is not only discriminatory but must be regarded as an attempted delegation of the legislative function offensive both to the State and the Federal Constitution."

See, also, *Holgate Brothers Co. v. Bashore*, 331 Pa. 255, 200 Atl. 672, 117 A. L. R. 639.

In our own case of *State ex rel. Makris v. Superior Court*, 113 Wash. 296, 193 Pac. 845, 12 A. L. R. 1428, Makris sought an injunction to prevent the commissioner of public safety in Tacoma from revoking a license to operate a soft drink and candy business. The city ordinance gave the commissioner power to revoke a license " 'whenever the preservation of public morality, health, peace or good order shall in his judgment render such revocation necessary.' " Makris challenged the constitutionality and validity of the ordinance. We sustained him, saying:

"This means that the commissioner, and in turn the city council, may, according to their own notions of what is a menace to 'the preservation of public morality, health, peace or good order' in each particular case, decide who may and who may not engage in business of this character in the city. In other words, the commissioner is left to determine for himself, not only what acts may have been committed by the licensee, but also whether or not such acts are 'disorderly or immoral,' or are a menace to the 'preservation of public morality, health, peace, or good order' warranting revocation of the license.

"We are not deciding that a business of the nature here in question may not be regulated within reasonable limits through the passage and enforcement of ordinances by the city; but only that the city has not the power, neither can the legislature confer upon it the power, to enact a valid ordinance by the terms of which some officer or set of officers, controlled by no more specifically prescribed rule of action than is found in the revocation provisions of this ordinance, may decide who may or may not conduct the manifestly ordinarily lawful business of a soft drink and candy store."

Nor are we deciding, or even intimating, that child care agencies should not be subject to regulation. We hold, shortly stated, that the power attempted to be conferred upon the director of social security by the Laws of 1933, chapter 172, and its amendments, relative to the issuance of certificates of approval, is, by reason of the failure of the legislature to set up proper standards and guides to indicate

the extent and limits of his discretion, an arbitrary, unlimited, and unconstitutional delegation of the legislative function. The order sustaining the demurrer to both counts of the information is approved, and the judgment of dismissal is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.