[No. 41530. En Banc. April 29, 1971.]

CAFFALL BROS. FOREST PRODUCTS, INC., *Appellant*, v. THE STATE OF WASHINGTON *et al.*, *Respondents*.

*Klingberg, Houston, Reitsch, Cross & Frey* and *Judson T. Klingberg,* for appellant.

*Slade Gorton, Attorney General,* and *Harold T. Hartinger, Special Assistant,* for respondents.

FINLEY, J.—In 1968, the State Department of Natural Resources authorized a sale of timber from state-owned normal school lands. *See* RCW 79.01.004. The published notice of sale listed *approximate* quantities of Douglas fir, hemlock and cedar which were to be sold at the public auction. This notice expressly indicated that the recited timber quantities were *not* based on a timber cruise by the state. Although such cruises are normally conducted by the state prior to sale, none was conducted before the instant auction, apparently because of the timber industry's request for accelerated timber sales, the state's need for immediate revenue, and a then favorable timber market.

During the auction, bids were accepted on a "weighted" basis. In essense, "weighted" bidding operates in the following manner: prior to the auction, the state sets minimum per-board-foot appraised values for each species of timber to be offered. Bids beneath this minimum appraised value are not accepted. During the actual course of the bidding, individual bidders enter separate per-board-foot bids on each separate species. These separate bids are then multiplied against the estimated quantity of each species and are tallied to arrive at the bidder's "total" bid. This "total" bid is used as the basis for awarding the auction sale of state timber. The "total" bid is not necessarily the amount to be paid by the successful bidder to the state. The instant sale was made on a log scale basis which meant that the successful bidder would pay the state, at the rate of his per-board-foot bid, upon the *actual quantity of timber eventually removed* from the sale area.

Bidding at the oral auction was spirited and, when the

hammer fell, appellant Caffall Bros. Forest Products, Inc. was the apparent high bidder with an offer of $683,785. Thereafter, however, the department became suspicious of the high bidding on hemlock,[1] and ordered confirmation of the sale delayed pending a post-sale cruise. The completed cruise disclosed that the state had seriously erred in its presale estimates, and that the proportionate quantities of the three species were greatly different than that originally estimated. As a result of this error, it appeared that Caffall Bros. was *not* the high bidder. Rather, due to the differences in "weighted" bids of other bidders, the apparent third highest bidder (based on presale uncruised estimated quantities) was, in actuality, the highest bidder (based on post-sale cruised quantities).

As a result of this information, the Commissioner of Public Lands refused to confirm the sale to the appellant, and entered an order rejecting the sale on the ground that it "would not have served the best interest of the State." The commissioner's action was reviewed, and affirmed, by the State Board of Natural Resources. Appellant then filed an application for writ of mandamus to compel the commissioner to confirm the sale in appellant's favor. Shortly thereafter, the state reoffered the timber for public bid and awarded a contract on a bid of $1,899,815—a figure some $1,216,030 higher than appellant's bid. The appellant then amended its action to ask for damages. This action was dismissed with prejudice by the trial court, and the instant appeal followed.

The appellant assigns several errors to the trial court's denial of relief. Initially, appellant challenges the trial court's refusal to declare RCW 79.01.212 unconstitutional as an unlawful delegation of legislative authority under Const. art. 2, § 1, insofar as this statute empowers the commissioner to determine whether the "best interests of the state may be subserved" by a given sale. RCW 79.01.212 provides:

---

[1]The state's presale minimum per–board–foot appraised value of hemlock was $29.50. Appellant's bid on hemlock was $115 per board foot.

> If no affidavit showing that the interest of the state in such sale was injuriously affected by fraud or collusion, shall be filed with the commissioner of public lands within ten days from the receipt of the report of the auctioneer conducting the sale of any public lands, or valuable material thereon, and it shall appear from such report that the sale was fairly conducted, *that the purchaser was the highest bidder at such sale,* and that his bid was not less than the appraised value of the property sold, and if the commissioner shall be satisfied that the lands, or material, sold would not, upon being readvertised and offered for sale, sell for at least ten percent more than the price at which it shall have been sold, and that the payment, required by law to be made at the time of making the sale, has been made, *and that the best interests of the state may be subserved thereby, the commissioner of public lands shall enter upon his records a confirmation of sale* and thereupon issue to the purchaser a contract of sale, deed or bill of sale, as the case may be, as in this chapter provided.

(Italics ours.)

In measuring the constitutionality of delegated administrative power, we adhere to the following standards:

> Amendment 7, of the state constitution, provides in part that "The legislative authority of the state of Washington shall be vested in the legislature, . . ." It is unconstitutional for the legislature to abdicate or transfer to others its legislative function. It is not unconstitutional for the legislature to delegate administrative power. In so doing, the legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in so doing, by prescribing reasonable administrative standards.

*Keeting v. PUD 1,* 49 Wn.2d 761, 767, 306 P.2d 762 (1957).

Contending that the "best interests" language of RCW 79.01.212 is an insufficient standard, the appellant cites several instances wherein this court has determined delegated administrative power to lack sufficient standards: *State v. Gilroy,* 37 Wn.2d 41, 221 P.2d 549 (1950) (invalidating legislation conferring upon the Director of Social Security power to grant or refuse certificates to individuals caring

for foster children, and requiring the director to be satisfied that "the methods used and the disposition made of the children will be in their best interests and that of society."); *Peterson v. Hagan,* 56 Wn.2d 48, 351 P.2d 127 (1960) (invalidating, for lack of sufficient standards, legislation empowering the Director of the Department of Labor and Industries to promulgate regulations as to minimum wages and hours for women and children); *United States Steel Corp. v. State,* 65 Wn.2d 385, 397 P.2d 440 (1964) (invalidating legislation authorizing the Tax Commission to assess late payment penalty without prescribing standards); *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 P. 845, 12 A.L.R. 1428 (1920) (invalidating Tacoma city ordinance allowing commissioner to revoke soft drink license "whenever the preservation of public morality, peace or good order shall in his judgment render such revocation necessary"). Additionally, appellant cites *Gelling v. Texas,* 343 U.S. 960, 96 L. Ed. 1359, 72 S. Ct. 1002 (1952), wherein the United States Supreme Court invalidated a film licensing standard denying the licensing of films "of such character as to be prejudicial to the best interests of the people of said City."

We are convinced, however, that these cases are inapposite to the issue presented herein. Appellant frankly admits that statutory and factual differences require questions regarding the constitutional sufficiency of the delegated power to be decided on a statute-by-statute and case-by-case basis.

The instant case involves the sale of timber from normal school lands. These lands are public lands and, as such, are lands "held in trust by the state." RCW 79.01.004. While the statute in question provides several grounds upon which the commissioner may reject a public bid, we believe he is not restricted to these specific enumerations. We have previously held that where the legislature confers upon administrative agencies functions which are merely incidental to administrative powers for the exercise of which the agency is created, the grant is not open to attack upon the ground that such functions are an unconstitu-

tional delegation by the legislature. *Shoreline School Dist. 412 v. Taxpayers of Shoreline School Dist.*, 52 Wn.2d 849, 329 P.2d 829 (1958). The logic of such a rule is clearly apparent from the facts of the instant case. Technical considerations involved in the management and sale of public lands require the development of *administrative expertise* and judgment of the type which cannot be specifically or minutely detailed by statutory prescription.

■ Appellant does not contend that the commissioner acted secretly, or without notice, in his rejection of the bid upon the ground that it would not serve the "best interests" of the state. Nor were the commissioner's reasons for withholding confirmation of the sale unknown to the appellant. The record indicates that appellant was fully informed of the state's hesitation to accept its bid shortly after the sale. We hold that the "best interests" language of RCW 79.01.212 does not constitute an unconstitutional delegation of legislative power.

Beyond this, however, the commissioner's action in the instant case may be sustained on an even more fundamental ground. The trial court expressly found that, as a result of the error in estimated timber quantities, the appellant was *not*, in fact, the high bidder at the auction. There can be little question that acceptance of a bid which is not the highest bid is a statutory ground for rejection of the sale. And, further, acceptance of a low bid, clearly, would *not* be in the "best interests" of the state.

The appellant next argues that the instant sale was completed at the "fall of the auction hammer," and cites *Farrell v. Neilson*, 43 Wn.2d 647, 649, 263 P.2d 264 (1953), wherein this court stated:

> When the property is called for sale and the minimum price is bid, that bid is an offer to purchase by the bidder which can be accepted by the treasurer. When there are no other bids, and the hammer falls, or, as here, the word, "sold," is pronounced by the treasurer, as auctioneer, a contract of sale results. 1 Restatement, Contracts, 34, § 27; 2 Williston on Sales (Rev. ed.) 200, § 296; 11 A. L. R. 545.

We must agree with respondents, however, that *Farrell*—which concerned a county tax sale, rather than a sale of material on public lands—provides no authority for disregard of the express terms of RCW 79.01.212, requiring that sales shall be confirmed to the highest bidder.

■■ Appellant's next contention is that the commissioner's failure to confirm its bid was an arbitrary and capricious action. It reasons that, after the fall of the auctioneer's hammer, the sale was completed, and the only remaining function for the commissioner to perform was that of a ministerial act—*i.e.,* issuance of sale confirmation if conditions of the statute are met. We have already indicated that the statute grants the commissioner more than a mere ministerial function. Even if this were not true, mandamus will not lie to compel an illegal action; and, confirmation of sale to a person other than the highest bidder would be an illegal action under the clear intent of, and purpose behind, the statute. *See, e.g., State ex rel. Northwestern Bond & Mort. Corp. v. Hinkle,* 134 Wash. 140, 235 P. 359 (1925); *State ex rel. Tacoma v. Rogers,* 32 Wn.2d 729, 203 P.2d 325 (1949).

Next, appellant contends the state is now estopped to reject the sale because the department, by its notice of sale, placed the burden and risk upon prospective purchasers to establish timber volumes to the purchasers' own satisfaction. Appellant argues that, in reliance upon this understanding, it incurred the expense of cruising the offered timber to determine quantities, and the state should now be held to the terms of its bargain. In this regard, appellant cites *State ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 452, 156 P. 554 (1916), wherein this court stated:

> [I]n its business relations with individuals, the state must not expect more favorable treatment than is fair between men.

While we are not unsympathetic to appellant's position which we assume to be a good-faith expenditure of resources in an effort to determine quantities of timber

offered for sale—the fact nevertheless remains that appellant's quantity estimates, like those of the state, were seriously in error. Further, the record clearly indicates that the state *also* acted in good faith, although in error.

 Presented with such a situation, we must resolve the mutuality of error in favor of the state. The fundamental and overriding purpose behind all public competitive bidding statutes is the attempt to secure for the public in the sale of its property the best attainable bargain. Where publicly-owned lands, or lands held in trust, are involved, the public can expect, and is entitled, to no less than the *actual* best possible bargain for the sale of those lands. Appellant's bid in the instant sale clearly would not have resulted in the best bargain to the public.

Finally, the appellant contends that certain evidence was improperly admitted by the trial court. Upon examination of the record, we find this contention to be without merit.

For the foregoing reasons, the decision of the trial court is affirmed.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, McGOVERN, STAFFORD, and WRIGHT, JJ., concur.