IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF SPOKANE, a municipal corporation located in the County of Spokane, State of Washington, | ) ) ) | No. 33622-1-III (consolidated with No. 33623-9-III) |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICKI HORTON, Spokane County Assessor, and ROB CHASE, Spokane County Treasurer, | ) ) ) | PUBLISHED OPINION |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF WASHINGTON, by and through the Department of Revenue, as interested party, | ) ) ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — The City of Spokane (City) enacted Ordinance C-35231 (Ordinance) for the laudable purpose of providing some of its disadvantaged citizens with a property tax exemption. The Spokane County assessor and treasurer (collectively the County) refused to implement the Ordinance due to their belief it exceeded the City's

statutory and constitutional authority. The Department of Revenue (DOR), also believing the Ordinance exceeded the City's statutory and constitutional authority, issued a directive to the county assessor not to implement the Ordinance.

In response, the City filed a complaint for a writ of mandamus to compel the County to implement the Ordinance. The trial court issued a writ of mandamus compelling the County to implement the Ordinance, in addition to related orders. The County and DOR appeal.

We conclude the Ordinance is unconstitutional because it violates article VII, section 9 of the Washington Constitution, which requires all municipal property taxes to be uniform in respect to persons and property. We, therefore, reverse the trial court's writ of mandamus and vacate its orders relating thereto.

## FACTS

In November 2014, the voters in the City approved a property tax "levy lid lift" for the improvement of streets throughout the City. Clerk's Papers (CP) at 26. A levy lid lift is a mechanism by which a city can assess a higher levy rate than otherwise would be permitted. The new levy was not intended to create any new tax burdens, and the City represented as much to the voters when it put forth the proposal. Prior to placing the levy on the ballot, the City conferred with the Spokane County assessor's office that assured it that the levy would not result in any increased tax burdens. But, in January 2015, the

assessor's office informed the City that the new levy would in fact result in an increase in property taxes for seniors and disabled persons, a total of approximately 5,000 people.

The City first attempted to work with the assessor's office to resolve this issue. The assessor's office sought advice from DOR, and involved DOR in the discussions with the City. When it became apparent the discussions were futile, the City enacted its own fix and, on February 9, 2015, passed the Ordinance.

The Ordinance is a property tax exemption for specific citizens living in the City— low income seniors, persons with permanent disabilities, and disabled veterans. After the City passed the Ordinance, the assessor's office sought advice from DOR as to whether the Ordinance was constitutional and within the City's taxing authority. Before a reply was received from DOR, the assessor's office prepared property tax assessment statements that did not apply the exemption granted by the Ordinance. The assessor's office informed the City it planned to mail the assessments without applying the exemption. The City requested that the assessor's office refrain from mailing the assessments without applying the exemption. The assessor's office replied that it could not do so until it received a response from DOR about the validity of the Ordinance. In response, the City filed a complaint seeking to enjoin the assessor's office from mailing any property tax assessments that did not apply the Ordinance. The Spokane County Superior Court granted the City's request and barred the assessor's office, via temporary

3

restraining order, from mailing the property tax assessments until it received a response from DOR.

DOR responded to the inquiry from the assessor's office a few days later. DOR's letter stated its opinion that the Ordinance "creates an exemption that is not authorized under state law, [and] it should not be implemented." CP at 125. DOR informed the City that its letter was not binding on the assessor, and it was ultimately the assessor's decision whether the Ordinance should be implemented. Eventually, the City filed an amended complaint seeking a writ of mandamus to compel the County to implement the Ordinance.

The County answered the City's amended complaint, and also asserted that a writ of mandamus was not appropriate. The County's answer also named DOR as a necessary party, and sought to join DOR. DOR filed a memorandum opposing the County's joinder motion. The City replied to DOR's memorandum and to the County's answer. The trial court held a hearing on April 2, 2015, and issued a decision later that month.

The trial court issued a writ of mandamus, held that the Ordinance was constitutional, ordered DOR's letter to the contrary annulled, ordered the County to implement the Ordinance in accordance with the writ of mandamus, stated that the order was a final judgment, and directed the City to present a motion in support of its request for damages and costs within 30 days.

The parties asked the trial court to clarify whether it joined DOR as a party to the

4

case. The trial court entered an order adding DOR as a party, but for purposes of appeal only. The County and DOR timely appealed.

ANALYSIS

DOR argues the Ordinance is unconstitutional. Specifically, DOR argues the Ordinance violates Washington Constitution article VII, section 9, which requires all municipal property taxes to be uniform in respect to persons and property. If the Ordinance is unconstitutional, we need not reach the issues raised by the County concerning whether the remedy of writ of mandamus was inappropriate. *See Caffall Bros. Forest Prods., Inc. v. State*, 79 Wn.2d 223, 229, 484 P.2d 912 (1971) ("[M]andamus will not lie to compel an illegal action."). Because constitutional challenges are questions of law, our review is de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

To answer whether the Ordinance is constitutional, we first examine Washington Constitution article VII, sections 1, 9, and 10.[1] We quote the pertinent portions of those sections below, and italicize phrases of particular significance to our decision:

> **SECTION 1 TAXATION.** . . . All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . .
>
> . . . .
>
> **SECTION 9 SPECIAL ASSESSMENTS OR TAXATION FOR**

---

[1] We shorten future references to sections 1, 9, and 10 by omitting article VII.

> **LOCAL IMPROVEMENTS.** The legislature may vest the corporate authorities of cities . . . with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes *and such taxes shall be uniform in respect to persons and property* within the jurisdiction of the body levying the same.
>
> **SECTION 10 RETIRED PERSONS PROPERTY TAX EXEMPTION.** Notwithstanding the provisions of Article 7, section 1 (Amendment 14) and Article 7, section 2[2] (Amendment 17), the following tax exemption shall be allowed as to real property:
>
> The *legislature shall have the power*, by appropriate legislation, to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners.

CONST. art. VII, §§ 1, 9, 10 (emphasis added).

Section 1's emphasis on uniformity of taxes is "'the highest and most important of all requirements applicable to taxation under our system.'" *Inter Island Tel. Co. v. San Juan County*, 125 Wn.2d 332, 334, 883 P.2d 1380 (1994) (quoting *Savage v. Pierce County*, 68 Wash. 623, 625, 123 P. 1088 (1912)). "Tax uniformity requires both an equal tax rate and equality in valuing the property taxed." *Belas v. Kiga*, 135 Wn.2d 913, 923, 959 P.2d 1037 (1998). "If equality is lacking in either area of tax spectrum (*i.e.*, either the rate of taxation or the assessment ratio), there will be a lack of uniformity in the tax burden." *Boeing Co. v. King County*, 75 Wn.2d 160, 165, 449 P.2d 404 (1969).[3]

---

[2] Article VII, section 2 sets a limit on tax levies for real and personal property.

[3] The dissent cites *Town of Tekoa v. Reilly*, 47 Wash. 202, 91 P. 769 (1907) for the propositions that a municipality may enact reasonable property tax exemptions, and that strict uniformity of taxes is neither possible nor required under our constitution. We

DOR argues the Ordinance violates section 9's uniformity requirement by applying two different regular property tax rates to real property in the City *and* by creating different assessment ratios between real property owned by its exempted citizens and real property not owned by its exempted citizens. The City does not dispute DOR's arguments that its property tax exemption creates nonuniformity.

Instead, the City responds by mischaracterizing DOR's argument. The City responds that section 1's uniformity requirement is superseded to the extent section 10 allows nonuniform rates for residential property owned by retired persons. The City's response fails to address DOR's actual argument, which relates to section 9, not section 1. The City's response also fails to justify the Ordinance to the extent it exempts persons

---

disagree that *Tekoa* requires us to affirm the City's Ordinance.

First, *Tekoa* involved a poll tax, not a property tax. Historically, these two types of taxes have been treated differently. *See* Alfred E. Harsch & George A. Shipman, *The Constitutional Aspects of Washington's Fiscal Crisis*, 33 WASH. L. REV. 225, 263-64 (1958).

Second, in *Tekoa,* the legislature expressly authorized towns such as Tekoa to enact the poll tax enacted by the town. Here, neither section 10 nor the legislature expressly authorized cities to enact their own property tax exemptions. Moreover, the exemptions enacted by the City are broader than section 10 permits even the legislature to enact.

Third, modern Washington jurisprudence has emphasized the importance of strict uniformity of property taxes. So, to the extent *Tekoa* might be applied broadly to property taxes, *Tekoa* conflicts with modern jurisprudence and has been overruled sub silentio. Accordingly, we must follow modern precedent. *Matsyuk v. State Farm Fire & Cas. Co.,* 173 Wn.2d 643, 659, 272 P.3d 802 (2012).

beyond retired persons, the group designated in section 10.

Section 10's prefatory language makes clear that it supersedes section 1. Therefore, section 10 allows the legislature, itself, to impose nonuniform taxes on residential property owned by retired persons. Section 10's prefatory language, however, does not expressly supersede section 9, the section that permits the legislature to vest corporate authorities with the power to assess and tax local improvements. Unless section 10 can be construed as impliedly superseding section 9's uniformity requirement, municipal corporations have no authority to impose nonuniform property taxes.

The City argues section 10 grants the legislature authority to confer on municipal corporations the exemption expressed in that section. The City does not cite any authority for its argument. In fact, section 10 contradicts the City's argument. Section 10 states "[t]he *legislature shall have the power* . . . to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners." (Emphasis added.) This clear language is not susceptible to allowing the legislature to "confer" section 10's authority on municipal corporations.

Finally, the City argues that the legislature, by enacting RCW 35A.11.020, gave code cities plenary power to assess and collect taxes, which includes enacting exemptions. We agree with DOR's two-fold response: First, section 9 prohibits municipalities from assessing and collecting nonuniform taxes, and the legislature cannot

8

No. 33622-1-III; 33623-9-III
*City of Spokane v. Spokane County*

accomplish by statute what the Washington Constitution prohibits. *See State ex rel.*

*Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 180, 492 P.2d 1012 (1972) (the

legislature has unrestrained power to enact reasonable laws except where

prohibited by the Washington Constitution). Second, the legislature explicitly qualified

RCW 35A.11.020 with the caveat, "[w]ithin constitutional limitations."

We conclude the Ordinance is unconstitutional because it violates the uniformity

requirement of article VII, section 9 of the Washington Constitution. We reverse the trial

court's writ of mandamus and vacate all orders relating thereto.


Lawrence-Berrey, J.

I CONCUR:


Korsmo, J.

9

No. 33622-1-III consolidated with 33623-9-III

FEARING, C.J. (dissenting) — This appeal asks whether a city's grant of exemptions to low-income disabled veterans and seniors violates the constitutional principle of property tax uniformity. Washington Supreme Court precedence, *Town of Tekoa v. Reilly*, 47 Wash. 202, 91 P. 769 (1907), answers the question in the negative. Therefore, I respectively dissent.

On February 9, 2015, the Spokane City Council adopted City Ordinance C-35231. The ordinance authorizes an exemption for a limited number of property owners for city levies adopted pursuant to RCW 84.55.050. RCW 84.55.050 allows a city, by majority vote of its populace, to increase property taxes beyond usual limitations. The vernacular for such a vote of approval is a levy lid lift. Months before adoption of City Ordinance C-35231, Spokane voters approved the levy lid lift in order to finance sorely needed road repairs.

After Spokane voters passed the levy lid lift, the Spokane City Council learned that low income senior citizens and disabled citizens, who receive exemptions from

payment of state property taxes, would not receive an exemption from the extra taxes imposed by the levy lid lift. Therefore, the City Council adopted Ordinance C-35231.

Under Spokane City Ordinance C-35231, a person is exempt from any legal obligation to pay all or a portion of the amount of excess and regular voted real property taxes levied pursuant to RCW 84.55.050 payable in the year following the year in which a claim is filed. Spokane Municipal Code (SMC) 8.18.020. A senior qualifies for the exemption if sixty-one years of age or older. SMC 8.18.020C. A United States military veteran qualifies if he or she receives compensation for a total disability or service-connected disability. SMC 8.18.020C. An otherwise qualified person must have a disposable income of $35,000 or less. SMC 8.18.020E. If the qualified individual receives income between $25,000 and $35,000, the individual is exempt from city property taxes on the greater of $50,000 or 35 percent of the valuation of his or her residence, but not to exceed $70,000 of the valuation of the residence. SMC 8.18.020E(1). If the qualified individual accrues income of less than $25,000, the individual is exempt from city property taxes on the greater of $60,000 or 60 percent of the valuation of the residence. SMC 8.18.020E(2).

Obviously, the state legislature did not enact Spokane City Ordinance C-35231. Nevertheless, the legislative body of eastern Washington's largest city enacted the ordinance. The ordinance expresses the will of the people of Spokane, and a court should be reluctant to declare the ordinance unconstitutional. A reviewing court presumes that a

2

challenged ordinance is constitutional. *City of Pasco v. Shaw*, 161 Wn.2d 450, 462, 166

P.3d 1157 (2007); *Cannabis Action Coal. v. City of Kent*, 180 Wn. App. 455, 482, 322

P.3d 1246 (2014), *aff'd*, 183 Wn.2d 219, 351 P.3d 151 (2015). The party challenging the

ordinance bears the burden to prove beyond a reasonable doubt that the ordinance is

unconstitutional. *Cannabis Action Coal. v. City of Kent*, 180 Wn. App. at 482. Absent a

constitutional prohibition, the wisdom of exempting low income seniors and disabled

citizens is left to the will of the people and their representatives, not this court.

State constitutions constrain taxing authorities, including local governments,

within the state. Typically, a state constitution requires that property taxes be uniformly

or equally assessed. Even the United States Constitution imposes a uniformity rule on all

"duties, imposts, and excises." Article 1, section 8, clause 1 of the United States

Constitution.

Washington Constitution article VII, section 9 imposes the uniformity principle on

taxes levied by Washington municipal corporations, such as cities. The section declares:

> The legislature may vest the corporate authorities of cities, towns
> and villages with power to make local improvements by special assessment,
> or by special taxation of property benefited. *For all corporate purposes*, all
> municipal corporations may be vested with authority to assess and collect
> taxes and *such taxes shall be uniform in respect to persons and property*
> within the jurisdiction of the body levying the same.

(Emphasis added.) Note that the uniformity requirement encompasses all taxation by a

municipal corporation, not only property taxation. Washington adopted section 9 as part

3

of its original constitution in 1889, and the section has not changed since. This appeal addresses whether Spokane City Ordinance C-35231 breaches article VII, section 9 of the Washington Constitution.

Washington Constitution article VII, section 1 imposes the same uniformity restriction on taxes imposed by the state legislature. The section reads, in relevant part:

> *All taxes shall be uniform upon the same class of property* within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. *All real estate shall constitute one class* . . . .

(Emphasis added.) Some exceptions apply to article VII, section 1 of the Washington Constitution. A constitutional provision expressly permits the Washington Legislature to grant property tax relief to retired citizens. Article VII, section 10 declaims:

> Notwithstanding the provisions of Article 7, section 1 . . . and Article 7, section 2 . . . , the following tax exemption shall be allowed as to real property:
> The legislature shall have the power, by appropriate legislation, to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners. The legislature may place such restrictions and conditions upon the granting of such relief as it shall deem proper. Such restrictions and conditions may include, but are not limited to, the limiting of the relief to those property owners below a specific level of income and those fulfilling certain minimum residential requirements.

Section 10 was adopted in 1966.

No constitutional provision, similar to article VII, section 10, authorizes a city to grant levy exemptions or tax relief to seniors or the disabled. The lack of a similar

4

constitutional provision for municipal taxation constructs a compelling argument that a city may not grant such exemptions and begs the related contention that such an exemption authorized by a city violates the uniformity principle of article VII, section 9. As analyzed later, case law insists otherwise.

Spokane County argues that a city's grant of a tax exemption to any property owner, regardless of the income of the owner, creates a nonuniform tax. With a tax exemption, some property owners are given preferential treatment. Under Ordinance C-35231, some property owners pay less tax than other property owners whose property is valued identically.

Tax uniformity is the highest and most important of all requirements applicable to taxation under our state tax system. *Inter Island Tel. Co. v. San Juan County*, 125 Wn.2d 332, 334, 883 P.2d 1380 (1994). Tax uniformity requires both an equal tax rate and equality in valuing the property taxed. *Belas v. Kiga*, 135 Wn.2d 913, 923, 959 P.2d 1037 (1998); *Covell v. City of Seattle*, 127 Wn.2d 874, 878, 905 P.2d 324 (1995). A difference in an assessment ratio causes a lack of uniformity in the tax burden. *Belas v. Kiga*, 135 Wn.2d at 923; *Univ. Vill. Ltd. Partners v. King County*, 106 Wn. App. 321, 325, 23 P.3d 1090 (2001). All real estate shall constitute one class. *Covell v. City of Seattle*, 127 Wn.2d at 878. These rules imply that municipalities may not grant exemptions to property owners, but none of these principles expressly or directly bar a taxing authority from bestowing exemptions or partial exemptions.

5

Cases forwarded by Spokane County do not involve express tax exemptions. *Belas v. Kiga*, 135 Wn.2d 913 (1998), the case most analogous, entails a state referendum that limited the amount of an assessed valuation increase per year for rapidly appreciating property. The Supreme Court invalidated the referendum on the basis of article VII, section 1, the provision addressing state, not city, taxation. Rapidly appreciating property owners did not pay the same rate for assessed valuation as other property owners. Therefore, the burden of taxation was shifted to owners of property that did not experience large value increases.

The Department of Revenue argued, in *Belas v. Kiga*, that value averaging was valid under the legislature's constitutional power to grant tax exemptions. Unlike article VII, section 9, section 1 reads that "such property as the legislature may by general laws provide shall be exempt from taxation." The *Belas* court reviewed the history behind the state referendum and did not find any promotional material describing the referendum as creating a tax exemption. Therefore, the court concluded that the measure did not create an exemption. The *Belas* court noted that exemptions from taxation were permissible under article VII, section 1.

The City of Spokane, like any other taxing district, sets a levy amount each year. That amount must be raised from property taxes on property throughout the city. The proportion paid by each property owner depends on the value of his or her property. If senior citizens and disabled persons receive a tax exemption, other owners must pay more

6

in taxes to compensate for the city's lost revenue resulting from the tax exemptions. For this reason, the purpose behind the uniformity principle is fulfilled by invalidating Ordinance C-35231. Nevertheless, a distinction lies between *Belas v. Kigas* and the case on appeal. The state referendum discriminated among property owners, whose property was taxed. Ordinance C-35231, in part, discriminates among taxpayers, since many seniors and disabled Spokane residents, even if qualifying for the exemption, still pay tax at an effectively lower rate, since a sum is deducted from the assessed value before applying the tax ratio. Nevertheless, some of those qualifying for the exemption will pay no taxes, if their property values deceeds a set sum. Under the latter circumstances, Ordinance C-35231 does not discriminate among tax payers, but removes some property owners altogether from the burden of paying taxes.

I now discuss two old, but critical, Washington Supreme Court decisions: *State v. Ide*, 35 Wash. 576, 77 P. 961 (1904), *overruled in part by Town of Tekoa v. Reilly*, 47 Wash. 202 (1907) and *Town of Tekoa v. Reilly*, 47 Wash. 202. The latter case controls this appeal.

In *State v. Ide*, the city of Port Townsend levied an annual $2 city street poll tax, or per capita tax, on each male inhabitant between the ages of twenty-one and fifty years, except a volunteer firefighter. A statute authorized a city to impose the tax. C.W. Ide challenged the constitutionally of the ordinance imposing the tax. Ide argued that the tax was not uniform since females, males under twenty-one and over fifty, and volunteer

7

firefighters did not pay. *Ide* relied on article VII, section 9, which requires uniformity as to both persons and property. The *Ide* court noted that the uniformity rule "does not preclude the legislature from selecting and classifying, in a proper and reasonable manner, the subjects of taxation." 35 Wash. at 586. Nevertheless, the court voided the ordinance, and the statute on which it rested, because the classification of persons taxed was arbitrary and capricious. The court wrote:

> The classification made in imposing this tax is based solely upon age and sex. It has no relation to the property of the persons to be taxed, *or to their ability to pay*. The persons selected to bear the burden are under no greater obligations to pay for keeping the streets in repair than others who are exempted from the payment of the tax. Does such classification, then, rest upon a reasonable difference between the persons taxed and others who are not taxed? It has been stated by our highest court that there is no precise application of the rule of reasonableness of classification, and that there cannot be an exact exclusion or inclusion of persons and things.
> Where exemptions from taxation are permissible, the reasonableness of the classification of subjects must therefore be determined from the facts and circumstances appearing in each particular case.

*Ide*, 35 Wash. at 587 (citation omitted) (emphasis added). Note that the *Ide* court did not hold that all exemptions violate article VII, section 9, only unreasonable exemptions.

In *Town of Tekoa v. Reilly*, 47 Wash. 202 (1907), the Supreme Court reviewed an 1890 law that authorized a city, through its city council, to impose an annual $2 poll tax on a male inhabitant between the ages of twenty-one and fifty years, provided that members of a volunteer fire company were exempted from the tax. The tax exempted the same four classes of persons exempted under the city of Port Townsend ordinance at

8

issue in *Ide*. Nevertheless, the Tekoa tax was not imposed for the purposes of streets, as

was the Port Townsend poll tax. James Reilly challenged the 1890 law and the town poll

tax as violating article VII, section 9. Reilly claimed the tax was not uniform.

Our Supreme Court, in *Town of Tekoa v. Reilly*, posed the profound philosophical

question of what constitutes uniformity. The court wrote:

> The decision in the case hinges entirely upon the meaning of the phrase "Shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." Uniformity and equality in taxation are relative terms. "Perfect uniformity and perfect equality of taxation, in all the aspects the human mind can view it, is a baseless dream." "Perfectly equal taxation will remain an unattainable good as long as laws and government and man are imperfect."
>
> The people of this state in adopting a constitution did not hope to attain the unattainable. *They did not propose to send the tax gatherer to the almshouse*, the orphan asylum or the nursery, nor did they propose to lay a tax on the inmates of these institutions. In other words, they fully understood that if a street or road poll tax should be imposed, certain classes of persons would of necessity be exempt from the imposition. This much was conceded in the *Ide* Case, for there the court said:
>
> "It is conceded by counsel for appellant that the uniformity rule in taxation usually prescribed by law does not preclude the Legislature from selecting and classifying in a proper and reasonable manner the subjects of the tax, and that rule is so firmly established that the citation of cases in support of it is entirely unnecessary."
>
> If the legislature may select and classify the subjects of the tax in a reasonable and proper manner how is a court to determine the reasonableness or appropriateness of the classification made? If up to the time of the adoption of the constitution, a street or road poll tax had never been imposed on a female or a minor in the [t]erritory of Washington, or elsewhere (to our knowledge), would a reasonable and proper classification require their inclusion or exclusion? The constitution was not the beginning of law for this state. At the time of its adoption Washington was an organized territory with a code of laws for the government of its people. Section 2863 of the Code of 1881 provided as follows:

9

"Every male inhabitant of this territory over twenty-one and under fifty years of age, must be assessed and annually pay a poll tax of two dollars, *except paupers*, idiotic and insane persons, and all active firemen who have been a member of any fire company in this territory for the period of one year preceding the assessment of taxes"; and nearly if not all the municipal charters granted by the territorial legislature authorized the imposition of a street poll tax with like exemptions.

By [section] 2 of article 27 of the [c]onstitution, these laws and special charters were continued in force, unless repugnant to the constitution itself.

47 Wash. at 205-06 (citations omitted) (emphasis added).

Under *Town of Tekoa v. Reilly*, exemptions from a tax do not necessarily negate uniformity. Although the decision involved a poll, not a property tax, the same constitutional provision at issue in this appeal was used to challenge the state law in *Town of Tekoa*. Therefore, the majority's attempt to distinguish *Town of Tekoa*, because of the nature of the tax, rings hollow. Although a state statute was involved in *Town of Tekoa*, the Supreme Court addressed the statute under article VII, section 9, which limits powers of a municipality.

The Supreme Court further wrote, in *Town of Tekoa v. Reilly*:

It must be apparent that a street poll tax imposed on minors or females, without regard to property or ability to pay, would be unjust and oppressive in the extreme. The burden of paying the tax for the entire household would ordinarily fall on the head of the family. Such a tax would lack both equality and uniformity and was never contemplated by the framers of the constitution. . . . After a full consideration of the question presented, we are satisfied that the uniformity rule of taxation does not forbid a proper classification of the subjects of the tax, that the classification complained of is reasonable and proper, is sanctioned by usage, and violates no provision of the state constitution.

10

47 Wash. at 209. The ending phrase "and violates no provision of the state constitution" is misplaced because the question posed was whether the exemption violated the constitution.

*Town of Tekoa v. Reilly* expressly overruled *State v. Ide*. Nevertheless, the two decisions may be read consistently, such that *Ide* need not have been overruled. Both decisions stand for the proposition that a tax exemption does not violate the uniformity principle as long as the exemption is reasonable. The exemption in *Ide* was found unreasonable. The exemption in *Tekoa* was held to be reasonable. Both *Tekoa* and *Ide*, in dicta, imply that an exemption based on low income is reasonable and proper.

I recognize that *Town of Tekoa v. Reilly* concerns a full exemption, not a reduction in property value for purposes of assessing taxes. Nevertheless, I find this distinction unimportant in distinguishing *Town of Tekoa*. If a city may impart a full exemption to low income property owners, the city should enjoy the power to convey a partial exemption. A partial exemption is less harmful to other taxpayers.

The City of Spokane relies on RCW 35A.11.020, which reads, in pertinent part:

> Within constitutional limitations, legislative bodies of code cities
> shall have within their territorial limits all powers of taxation for local
> purposes . . . .

I agree with Spokane County that the statute helps the city none since the statute only allows taxation consistent with constitutional restrictions, and, even without the statutory

11

language, the statute could not breach the state constitution. The city's reliance on RCW 35A.11.020 only returns us to the original question of whether city levy exemptions breach the constitutional principle of uniformity.

The Washington State Department of Revenue understandably litigates this appeal as aggressively as does Spokane County. The legislature granted the department authority to ensure equality of taxation and uniformity of administration in a tax structure fractionalized by thirty-nine counties. *Boeing Co. v. King County*, 75 Wn.2d 160, 165, 449 P.2d 404 (1969). The Department of Revenue argues that a city's grant of a property tax exemption to any classification of property owners conflicts with the equalization process the department conducts each year. The department may even argue that exemptions from city levies render its process difficult, if not impossible. The department must equalize tax assessments from county to county or across the state, just as county assessors must equalize assessments within a county. Therefore, the Department of Revenue integrally inserts itself into the county assessment process.

I find the Department of Revenue's argument unpersuasive. The county assessor and state Department of Revenue must already equalize assessments with state tax exemptions bestowed to disabled veterans and elderly. Extending the exemptions to city levies should not be impossible. The Department of Revenue employs astute analysists and uses competent computer technology to perform equalizations. At any rate, the

12

department must follow the law, and Supreme Court precedence allows a city to grant exemptions on property levies.

A persuasive case bolsters my conclusion. In *Borough of Rochester v. Geary*, 30 Pa. Commw. 493, 373 A.2d 1380 (1977), an ordinance exempted from a per capita tax, or poll tax, residents over sixty-two years of age with incomes less than $3,200 per annum. The court rejected a challenge to the constitutionality of the exemption under Pennsylvania's uniformity clause. The court wrote:

> As was stated in *Commonwealth v. Life Assurance Company of Pennsylvania*, 419 Pa. 370, 376, 214 A.2d 209, 214 (1965): "The only constitutional limitation placed upon the power of the Legislature to distinguish between various entities for purposes of taxation is that their basis for doing so be reasonable." (Citations omitted.) The burden of proving that a given classification is unreasonable and thus unconstitutional is a very heavy one. We feel that an exemption benefiting elderly residents of appellee with incomes of less than $3,200 per annum is not unreasonable.

*Borough of Rochester v. Geary*, 30 Pa. Commw. at 499.

Admittedly, the Supreme Court issued *Town of Tekoa v. Reilly* 109 years ago. Nevertheless, *Tekoa* has been cited in cases since: *Sch. Dists' All. for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 618, 244 P.3d 1 (2010) (Chambers, J., concurring in part/dissenting in part); *State v. McCollum*, 17 Wn.2d 85, 153, 136 P.2d 165, 141 P.2d 613 (1943) (Millard, J., dissenting on denial of reh'g); *Aberdeen Sav. & Loan Ass'n v. Chase*, 157 Wash. 351, 385, 289 P. 536 (1930); *MacLaren v. Ferry County*, 135 Wash. 517, 520, 238 P. 579 (1925); *Nipges v. Thornton*, 119 Wash. 464,

13

470, 206 P. 17 (1922); and *State v. Superior Court of Whitman County*, 92 Wash. 360, 362, 159 P. 383 (1916). No later Washington decision overrules or even criticizes the holding of *Tekoa*.

This appellate court remains bound by a decision of the Washington Supreme Court. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). An intermediate appellate court does not have the option of disregarding a higher state court's decisions that have not been overruled, no matter how old the precedent may be. *Johns Hopkins Hosp. v. Correia*, 174 Md. App. 359, 382, 921 A.2d 837 (2007), *aff'd*, 405 Md. 509, 954 A.2d 1073 (2008); *Haun v. Guar. Sec. Ins. Co.*, 61 Tenn. App. 137, 158, 453 S.W.2d 84 (1969); *Dobbins v. Hardister*, 242 Cal. App. 2d 787, 792-93, 51 Cal. Rptr. 866 (1966). In *State v. South Central Bell Telephone. Co.*, 619 So. 2d 749, 753 (La. App. 1993), the intermediate appellate court of Louisiana recognized the need to follow the ruling in a 94-year-old case.

Some of the reasoning in Supreme Court decisions succeeding *Town of Tekoa v. Reilly* may conflict with the holding in *Tekoa*. This presents no excuse for us to disregard *Tekoa*. The state Supreme Court may wish to revisit and overturn *Tekoa*, but only the Supreme Court holds this prerogative. We must follow Supreme Court precedent, regardless of any personal disagreement with its premise or correctness. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006); *State v. Gore*,

14

101 Wn.2d at 487 (1984). When the Court of Appeals fails to follow directly controlling authority by this court, it errs. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d at 578 (2006); *State v. Gore*, 101 Wn.2d at 487. We should particularly follow precedence when to do otherwise would declare an ordinance unconstitutional and when the standard of unconstitutionality is beyond a reasonable doubt.

I respectfully dissent.

_Fearing, J._

Fearing, C.J.

15