## THE CITY OF FARIBAULT

*vs.*

## ANDREW MISENER.

The provision of *art.* 9, *sec.* 1, of the constitution, that "all taxes to be raised in this state shall be as nearly equal as may be," does not require absolute and perfect equality, and does not forbid taxation by the poll as it has been always practised in this state under general laws and municipal charters, although those laws and charters provide for the exemption of certain classes of the population from payment of poll-taxes.

The long continued acquiesence of the people in the laws, under which poll-taxes have been collected throughout the state, has established a legislative and popular construction of the constitution in favor of the validity of these laws.

A practical construction of the constitution, which has been adopted and followed in good faith by the legislature and people for many years, should have great weight with the courts.

The charter of the city of Faribault authorized the levy of a poll-tax on all qualified voters, but exempted members of fire companies from liability to the tax; *Held,* that this provision of the charter is not repugnant to the constitutional provision before cited.

Whether tax is a debt, and can in any case be collected by an action at law, in the absence of express statutory authority therefor, *quære.*

Where a statute creates a right, and provides a method in which it may be enforced, the statutory remedy is exclusive; and this although such statutory remedy be impracticable or insufficient.

Appeal by the plaintiff from a judgment of the district court for Rice county. The case is stated in the opinion.

O. F. PERKINS, for Appellant.

GORDON E. COLE, for Respondent.

*By the Court.*—YOUNG, J.—The charter of the plaintiff, the

City of Faribault v. Misener.

city of Faribault, provides that " it shall be lawful for the common council of said city at any time to levy a corporation poll-tax upon every qualified voter in said city; provided, that said tax shall not, in any one year, exceed the sum of two dollars on each person."

" The common council shall have power   *   *   *   to authorize the formation of fire engine, hook and ladder, and hose companies   *   *   *.  Every member of each company which may be authorized to be formed, shall be exempt from highway work and poll-tax, from serving on juries and from military duty, during the continuance of such membership." *Special Laws* 1872, *p.* 114, *sec.* 8; *p.* 121, *sec.* 3.

Pursuant to the authority given by the charter, the common council of the city, in each of the years 1872 and 1873, levied and assessed a poll-tax of two dollars on every qualified voter in the city, except the persons exempt by the section last quoted.  During these years, and at the commencement of this action, the defendant was a qualified voter in the city, and not a fireman.  The street commissioner of the city demanded payment of the poll-tax for each of these years from the defendant, which being refused, this action was brought before a justice of the peace to recover the sum of four dollars, being the amount of defendant's poll-tax for the years 1872 and 1873, as a debt due from the defendant to the city.  The justice rendered judgment for the defendant, which on appeal was affirmed by the district court, and the plaintiff appeals to this court.

The defendant contends that the clause in the charter, exempting firemen from the payment of poll-tax, and the ordinance directing the levy and assessment of a poll-tax upon all qualified voters, except such as are exempt by the provisions of the charter, are repugnant to the constitution of the state, *art.* 9, *sec.* 1, which is as follows: " All taxes to be raised in

this state shall be as nearly equal as may be, and all property, on which taxes are to be levied, shall have a cash valuation, and be equalized and uniform throughout the state."

While the latter clause of this section can only apply to taxes upon property, the former clause is broad enough in its terms to include any possible form of taxation, whether of persons or property, and to prohibit all exemptions whatsoever. Upon a strict construction of its language, a poll-tax upon qualified voters alone is as objectionable as a poll-tax on all qualified voters except firemen, for it is undoubtedly *possible* to levy and assess a poll-tax upon every inhabitant of the city, of whatsoever sex, age or occupation. The effect of such a construction, however, would be to prohibit taxation by the poll altogether; for there can be no doubt but that a poll-tax, thus levied and assessed, would justify the declaration of the bill of rights of the state of Ohio : " That the levying taxes by the poll is grievous and oppressive ; therefore the legislature shall never levy a poll-tax for county or state purposes."

No such prohibition as this is contained in the constitution of this state. The legislature has, therefore, the power to impose a poll-tax. The very language of the constitution implies that absolute equality is not to be expected. Taxes are to be " as nearly equal as may be ;" not as nearly equal as a mathematical calculation can make them, but as nearly equal as is consistent with the general welfare of the people, and an equitable distribution of the public burdens. The constitution does not require a theoretical equality at the expense of substantial equity. (*Sanborn vs. Commissioners of Rice Co.* 9 *Minn.* 273 ; *Comer vs. Folsom*, 13 *Minn.* 219.) And in view of the grievous and oppressive results which would follow a levy and assessment upon the whole population of a certain sum per capita, a mode of taxation which, under the guise of equality, might, and probably would, be productive of intol-

erable hardship, it is clear that in the exercise of its right to levy poll taxes, the legislature must deviate to some extent from any such Procrustean standard of equality as this.

Whether the deviation in the present case is such as to amount to a disregard of the constitutional requirement, is a question upon which much light will be thrown by a review of the legislation of the territory and state of Minnesota upon the subject of poll-taxes.

The poll-tax, which is levied and collected in most of the cities of the state under charters similar to that of the plaintiff, is closely analagous to, and seems to be to some extent a substitute for the highway labor tax, or the highway poll-tax as it may be called, which from the earliest times has been levied and assessed upon the inhabitants of townships under general laws. This highway poll-tax, although levied and assessed in labor, may be commuted for in money, and is as truly a *tax* as if, (like the road tax assessed on lands,) it were levied and assessed in money, but could be commuted for in labor. In at least one instance in the statutes, (*Gen. Stat. chap.* 10, *sec.* 15,) it is styled a " poll-tax." In the section before quoted from the plaintiff's charter the firemen are exempted from " highway work and poll-tax," although the charter contains no provisions imposing highway labor on the inhabitants of the city. The case of *Sawyer vs. Allen,* 3 *Scam.* 130, cited by the defendant's counsel as authority for the position that poll-taxes should be equal, was a case involving the legality of an assessment of labor on the highways. And see *Dillon, Mun. Corp.* (*2d Ed.*) *sec.* 604. The legislation upon the subject of highway poll-taxes may, therefore, be referred to, for these too, being taxes, are required to be as nearly equal as may be.

By the *Revised Statutes* of 1851, (*chap.* 8, *art.* 10, *sec.* 5, *p.* 79,) it is provided that " every male person between the age of twenty-one and the age of fifty years, who is able to per-

form manual labor, shall be subject to labor or furnish some person to labor" (on the highways) " three days in each year."

This law continued in force until repealed, (after the adoption of the state constitution,) by the " act to provide for township organization," passed August 13, 1858, at the first session of the state legislature. This act provides, (at section 164,) that " every male inhabitant, being above twenty-one years and under the age of fifty, excepting paupers, idiots, lunatics and such others as are exempt by law, shall be assessed at least two days in each year." (*Laws* 1858, *chap.* 75; *Pub. Stat. chap.* 8.) This section was re-enacted as *sec.* 9 in *chap.* 13 of the *General Statutes of* 1866, " of roads, cartways and bridges," the number of days service required being limited to four. The act of March 8, 1873, entitled " An act relating to roads, cartways and bridges," repeals chapter 13 of the General Statutes, but re-enacts section 9, with the provision for an assessment of " not less than one nor more than four days in each year." (*Laws* 1873, *chap.* 5, *sec.* 9.) By the act of August 2, 1858, for the formation of fire companies, it is provided that the members of such companies shall be exempted from labor on the highways. (*Laws* 1858, *chap.* 84, *Pub. Stat. chap.* 125.) This act remained in force until the revision of 1866.

At almost every session of the state legislature, cities have been incorporated under charters providing for the levy of a poll-tax, in some cases on all qualified voters, and in others on all qualified voters except firemen. *Sp. Laws* 1858, *chaps.* 71, 78, 79; 1862, *chap.* 1; 1863, *chap.* 6; 1864, *chap.* 6; 1865, *chap.* 13; 1866, *chap.* 18; 1867, *chap.* 19; 1872, *chap.* 10, *&c.*

The plaintiff's and the other charters do not impose the poll-tax upon precisely the same class of inhabitants on whom the highway poll-tax is imposed, nor do they allow precisely the same exemptions; but the general laws and the city char-

City of Faribault v. Misener.

ters alike impose a poll-tax upon a minority of the inhabitants, and they all contain exceptions of persons, belonging to the class on whom the tax is laid, but who are specially exempted from its burden, and they alike deviate from rigid equality of taxation in allowing any exception or exemption whatever.

Under these general laws and city charters, the highway labor tax in townships, and the corporation poll-tax in cities, have been levied, assessed and collected during the whole period which has elapsed since the adoption of the constitution, and the highway tax from the earliest days of the existence of Minnesota as a territory. If it was the intention of the framers of the constitution, by the general clause requiring equality of taxation, to forbid taxation by the poll as it had been practised under the territorial government, it is remarkable that the meaning and effect of the constitutional prohibition should have been so entirely misapprehended by the legislature and the people for so many years.

This long continued acquiescence of the people in the laws, under which these taxes have been collected in towns and cities throughout the state, has established, as a legislative and popular construction of the constitution, that the clause under consideration does not forbid taxation by the poll in the manner in which it has been imposed by those laws, and that the taxes so imposed are " as nearly equal as may be," as nearly equal as the nature of this mode of taxation permits, although they may deviate from an ideal standard of equality.

A practical construction of the constitution, which has been adopted and followed in good faith by the legislature and people for many years, is always entitled to receive great consideration from the courts. *Rogers vs. Goodwin*, 2 *Mass.* 477 ; *Packard vs. Richardson*, 17 *Mass.* 121, 143 ; *Moers vs. Reading*, 21 *Penn. St.* 188 ; *McCulloch vs. Maryland*, 4 *Wheaton*, 316 ;

*Bradford vs. Jones*, 1 *Md.* 369 ; *Mayor of Baltimore vs. State*, 15 *Md.* 458 ; *Loring vs. Benedict*, 15 *Minn.* 203.   Applying this rule to the present case, and a fitter case for such application can rarely occur, we are of opinion that the charter and or- dinance in question are not repugnant to the constitution of the state.

If this were an open question, it might well be urged that a tax imposed solely upon qualified voters, which excepts from its burden only those who have no vote in the election of the body by which it is levied, is not within the mischief at which the constitutional provision was aimed.   In this case taxa- tion and representation go hand in hand.   Those alone, who by their chosen representatives vote the tax, are required to pay the tax, which they have laid upon themselves.   Neither is the exemption of firemen a gratuitous discrimination in fa- vor of a privileged class.   The difficult and dangerous ser- vices required from them are a burden far heavier than the poll-tax, jury duty and militia service from which they are released.

The poll-tax being the equivalent of the highway labor or poll-tax, the plaintiff's charter provides as follows for its col- lection :   " The street commissioner shall collect the corpora- tion or poll-tax, which may be laid by the common council, and said street commissioner shall have all the power as pos- sessed by road supervisors, as provided by the laws of the state, and shall report to the common council when required." (*Sp. Laws*, 1872, *p.* 124, *sec.* 8.)

It is evident that the powers of road supervisors thus con- ferred on the commissioner, are powers in the collection of the poll tax.   He is to have the same power in collecting the poll-tax that the road supervisors have in collecting taxes. Road supervisors, ( or rather overseers, as they are styled in the general laws,) possess other powers, relating to subjects

upon which the plaintiff's charter is silent, so that the section quoted cannot be construed as conferring on the commissioner all the powers of road overseers in all matters. (*Gen. (Stat. chap.* 13, *sec.* 13, *&c.*; *Laws* 1873, *chap.* 5, *sec.* 14, *&c.*) Moreover, the general powers of the street commissioner are to be sought for in that section of the plaintiff's charter, in which his office is created, and his functions defined and enumerated. (*Sp. Laws* 1872, *p.* 102, *sec.* 11.)

The defendant's counsel contends that a tax is not a debt, and cannot in any case be collected in an action like the present, (unless such action is expressly given by statute.) In this position he is supported by the decisions and *dicta* of courts and judges of great authority. (*See Andover, &c., Turnpike Co. vs. Gould*, 6 *Mass.* 44; *Pierce vs. Boston*, 3 *Met.* 520; *Appleton vs. Hopkins*, 5 *Gray*, 533; *Shaw vs. Pickett*, 26 *Vt.* 486; *City of Camden vs. Allen*, 2 *Dutcher*, 398; *Lane county vs. Oregon*, 7 *Wall.* 71, 80, *per Chase, C. J.*,) although the law is held otherwise in Maryland, Illinois, and some other states. (See the cases collected in *Dillon Mun. Corp.*, 2d ed. *sec.* 655.)

However this may be, when the statute authorizing the tax is silent as to the mode in which payment may be compelled, it is well settled, that where a right is given by statute, and the statute also provides a method in which such right may be enforced, the statutory method must be followed to the exclusion of others. 1 *Chitty Pl.* 112, 143; *Andover, &c., Turnpike Co. vs. Gould*, 6 *Mass.* 43; *Cole vs. Muscatine*, 14 *Iowa*, 298; *Montour vs. Purdy*, 11 *Minn.* 408.

The plaintiff's charter evidently contemplates that, in the collection of poll-taxes, the street commissioner shall have the power to take such proceedings as road overseers are authorized to take, for collecting the road tax, by *Gen. Stat.*, *chap.* 13, *secs.* 19-22; *Laws* 1873, *chap.* 5, *secs.* 20-23.

It is contended by the plaintiff that these proceedings are

not adequate to the collection of this tax; that, therefore, the plaintiff has no *sufficient* statutory remedy; and that, in such case, it has by implication a right to collect by suit. The authority cited in support of this position, (*Dillon Mun. Corp.*, *sec.* 556,) refers to cases " where the charter imposing taxes is silent respecting the method for their recovery." But in the same statute, in which the legislature has granted to the plaintiff the power of imposing a poll-tax, it has pointed out a way in which the right thus granted may be enforced, and has thus plainly signified its intention that the plaintiff should resort to the remedy expressly provided by the statute, and to that alone. This express grant of a specific remedy precludes the implication of a grant of authority to collect the tax by an ordinary action at law.

This mode of enforcing payment of a tax by a resort to a civil action in the first instance is, moreover, so wide a departure from the settled policy of the state on the general subject of tax collections, as to raise a very strong presumption, that if the legislature had intended that such a method should be pursued in collecting this poll-tax, it would have so provided in express terms, and would not have left its intention to be inferred from its silence.

No doubt the proceeding provided by the statute is insufficient and impractible as a means for the collection of this tax. This is good ground for an application to the legislature to provide a more available and efficient method; but it affords no basis for the inference that the legislature intended that the plaintiff should have any other remedy than that which it has seen fit to provide, however inadequate such remedy may prove.

We are, therefore, of opinion that the tax in question cannot be collected by suit, and that the judgment of the district court should be affirmed.