[No. 6698. Decided September 28, 1907.]

THE TOWN OF TEKOA, *Respondent*, v. JAMES E. REILLY, *Appellant*.[1]

APPEAL—DECISION—COURTS—STARE DECISIS. While courts are reluctant to overrule their decisions, this rule should not prevent the correction of an erroneous limitation on the taxing powers, where no rule of property is involved.

TAXATION—UNIFORMITY—STREET POLL TAX. Laws 1905, p. 140, authorizing cities of the third and fourth classes to impose and collect an annual street poll tax from male inhabitants over 21 years of age, does not, by reason of the exemption of females and minors, violate Const. art. 7, § 9, requiring uniformity in city taxes in respect to persons and property; since the constitutional requirement as to uniformity does not forbid a proper classification of the subjects of the tax (overruling *State v. Ide*, 35 Wash. 576, 77 Pac. 961).

Appeal from a judgment of the superior court for Whitman county, Chadwick, J., entered July 13, 1906, upon findings in favor of the plaintiff, sustaining the validity of a street poll tax. Affirmed.

[1]Reported in 91 Pac. 769.

*E. A. Williams,* for appellant.

*Canfield & Burson,* for respondent.

RUDKIN, J.—This is an appeal from a judgment sustaining the validity of a street poll tax, imposed under Section 1 of the act of March 5, 1905, Laws 1905, page 140, by the town of Tekoa, a municipal corporation of the fourth class. The validity of the legislative act under which the tax was imposed is the principal question raised by the appeal, and the only question we deem it necessary to consider, as we find no merit in the other assignments of error. In *State v. Ide,* 35 Wash. 576, 77 Pac. 961, this court held that subdivision 7 of § 117 of the act of March 27, 1890, Laws 1890, page 183, was void, for lack of uniformity, under § 9 of article 7 of the state constitution. We here set forth the two sections and the constitutional provision invoked, so far as deemed material:

"The city council of such city shall have power   .   .   . 7.  To impose on and collect from every male inhabitant between the ages of twenty-one and fifty years an annual street poll tax not exceeding two dollars, and no other road poll tax shall be collected within the limits of such city:  *Provided,* That any member of a volunteer fire company in such city shall be exempt from such tax."   Laws 1890, page 183, § 117.

"The city council of cities of the third and fourth class in this state shall have power to impose on and collect from every male inhabitant of such city over the age of twenty-one years an annual street poll tax not exceeding two dollars, and no other road poll tax shall be collected within the limits of such city."   Laws of 1905, page 140.

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."   Constitution, article 7, § 9.

A comparison of the two sections will show that the former exempted four classes of persons, viz., females of all ages,

males under the age of twenty-one years, males over the age
of fifty years, and volunteer firemen; while the latter exempts
females and males under the age of twenty-one years only.
There is nothing in the opinion in *State v. Ide* to indicate that
the court deemed the exemption of females and males under
the age of twenty-one years less obnoxious to the constitution
than the exemption of males over the age of fifty years and
volunteer firemen, and at the present time we see no plausible
reason why the former section should be nullified and the latter
upheld. We must therefore reverse the judgment in this case
on the authority of *State v. Ide* or reconsider the question
there decided. Courts are always reluctant to overrule their
own solemn judgments and justly so.

"If a decision has been made upon solemn argument and
mature deliberation, the presumption is in favor of its correct-
ness; and the community have a right to regard it as a just
declaration or exposition of the law, and to regulate their
actions and contracts by it. It would therefore be extremely
inconvenient to the public if precedents were not duly regarded
and implicitly followed. It is by the notoriety and stability
of such rules that professional men can give safe advice to
those who consult them; and people in general can venture
with confidence to buy and trust, and to deal with each other.
If judicial decisions were to be lightly disregarded, we should
disturb and unsettle the great landmarks of property. When
a rule has been once deliberately adopted and declared, it
ought not to be disturbed, unless by a court of appeal or re-
view, and never by the same court, except for very cogent
reasons, and upon a clear manifestation of error; and if the
practice were otherwise, it would be leaving us in a state of
perplexing uncertainty as to the law." 1 Kent, Commen-
taries (14th ed.), p. 476.

"It will of course sometimes happen that a court will find
a former decision so unfounded in law, so unreasonable in its
deductions, or so mischievous in its consequences, as to feel
compelled to disregard it. Before doing so, however, it will
be well to consider whether the point involved is such as to
have become a rule of property, so that titles have been ac-
quired in reliance upon it, and vested rights will be disturbed

by any change; for in such a case it may be better that the correction of the error be left to the legislature, which can control its action so as to make it prospective only, and thus prevent unjust consequences." Cooley, Constitutional Limitations (7th ed.), p. 86.

We do not think, however, that a proper adherence to this wholesome rule forbids further inquiry in this case. No rule of property is involved, the legislature has reenacted the section nullified in *State v. Ide*, with slight modifications, and if this court has heretofore erroneously restricted the power of the legislature in the important matter of taxation we deem it our highest duty to correct the error at the first opportunity. The decision in the case hinges entirely upon the meaning of the phrase "Shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." Uniformity and equality in taxation are relative terms. "Perfect uniformity and perfect equality of taxation, in all the aspects the human mind can view it, is a baseless dream." Head Money Cases, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798. "Perfectly equal taxation will remain an unattainable good as long as laws and government and man are imperfect." *Commonwealth v. People's etc. Savings Bank*, 5 Allen 428.

The people of this state in adopting a constitution did not hope to attain the unattainable. They did not propose to send the tax gatherer to the almshouse, the orphan asylum or the nursery, nor did they propose to lay a tax on the inmates of these institutions. In other words, they fully understood that if a street or road poll tax should be imposed, certain classes of persons would of necessity be exempt from the imposition. This much was conceded in the *Ide* case, for there the court said:

"It is conceded by counsel for appellant that the uniformity rule in taxation usually prescribed by law does not preclude the legislature from selecting and classifying in a proper and reasonable manner, the subjects of the tax, and that rule is

so firmly established that the citation of cases in support of it is entirely unnecessary."

If the legislature may select and classify the subjects of the tax in a reasonable and proper manner, how is a court to determine the reasonableness or appropriateness of the classification made? If up to the time of the adoption of the constitution, a street or road poll tax had never been imposed on a female or a minor in the Territory of Washington, or elsewhere (to our knowledge), would a reasonable and proper classification require their inclusion or exclusion? The constitution was not the beginning of law for this state. At the time of its adoption Washington was an organized territory with a code of laws for the government of its people. Section 2863 of the Code of 1881 provided as follows:

"Every male inhabitant of this territory over twenty-one and under fifty years of age, must be assessed and annually pay a poll tax of two dollars, except paupers, idiotic and insane persons, and all active firemen who have been a member of any fire company in this territory for the period of one year preceding the assessment of taxes;"

and nearly if not all the municipal charters granted by the territorial legislature authorized the imposition of a street poll tax with like exemptions. See, also, Seattle Charter, § 7, Laws 1885 and 1886, p. 241; Spokane Charter, § 8, Id., p. 302; Tacoma Charter, § 48, Subd. 2, Id., p. 196; Ellensburg Charter, chap. 2, § 5, Id., 397; Pomeroy Charter, chap. 2, § 7, Id., 326; Montesano Charter, chap. 2, § 8, Id., 353; Waitsburg Charter, chap. 2, § 8, Id., 275; North Yakima Charter, chap. 2, § 8, Id., 376.

By § 2 of article 27 of the Constitution, these laws and special charters were continued in force, unless repugnant to the constitution itself. Are all these charter provisions to be held for naught, simply because the constitution contains the general altruistic declaration that taxes shall be uniform with respect to persons and property? Had the framers of the constitution been dissatisfied with the existing order of things

would we not expect to find some more satisfactory evidence of their discontent? Instead of this, the first legislature to assemble under the constitution imposed an annual poll tax of two dollars on every male inhabitant of the state over twenty-one and under fifty years of age, except paupers, idiots, and insane persons (Laws 1890, page 553, § 64), and authorized municipalities to impose a street poll tax with like exemptions (Laws 1890, page 183, § 117, subd. 7). It was said in the *Ide* case that the custom of imposing such taxes since statehood could not legalize the usurpation of power. While this is true, yet when we consider that the custom during statehood is but the continuation of a custom running all through territorial days and sanctioned by territorial laws, a court should hesitate long before declaring it a usurpation of power. The decision in the *Ide* case seems to have been controlled largely by the decision in *Hunsaker v. Wright*, 30 Ill. 146, but that case involved a property tax and the question of classification or exemption under a poll tax law was not considered or decided. In *Town of Pleasant v. Kost*, 29 Ill. 490, the same court held that a statutory requisition upon male inhabitants between the ages of twenty-one and fifty years, except firemen, for two days labor for the repair of roads and streets, which might be commuted in money, was not in violation of the constitution of that state. True, the authority to impose the tax was found in the police power rather than in the taxing power of the state. Discussing the question of uniformity in *Commissioners of Ottawa County v. Nelson*, 19 Kansas 234, 27 Am. Rep. 101, the court said:

"Neither do we suppose that capitation taxes, or poll taxes, or requirements to work on the roads, or to train in the militia, come within said constitutional provision, although evidently they are all taxes in one sense."

In *City of Faribault v. Misener*, 20 Minn. 396, it was held that a poll tax imposed on qualified voters, except firemen, did not violate the constitutional requirement of equality in taxa-

tion. In the *Ide* case it was said that the Minnesota court was influenced largely by the long continued acquiescence of the people in the statute under which the tax in question was imposed; but while the long acquiescence of the people in the custom of levying such taxes was alluded to, yet a much more satisfactory reason for the decision can be found in the following extract from the opinion:

"While the latter clause of this section can only apply to taxes upon property, the former clause is broad enough in its terms to include any possible form of taxation, whether of persons or property, and to prohibit all exemptions whatsoever. Upon a strict construction of its language, a poll-tax upon qualified voters alone is as objectionable as a poll-tax on all qualified voters except firemen, for it is undoubtedly *possible* to levy and assess a poll-tax upon every inhabitant of the city, of whatsoever sex, age or occupation. The effect of such a construction, however, would be to prohibit taxation by the poll altogether; for there can be no doubt but that a poll-tax, thus levied and assessed, would justify the declaration of the bill of rights of the state of Ohio: 'That the levying taxes by the poll is grievous and oppressive; therefore the legislature shall never levy a poll-tax for county or state purposes.'

"No such prohibition as this is contained in the constitution of this state. The legislature has, therefore, the power to impose a poll-tax. The very language of the constitution implies that absolute equality is not to be expected. Taxes are to be "as nearly equal as may be"; not as nearly equal as a mathematical calculation can make them, but as nearly equal as is consistent with the general welfare of the people, and an equitable distribution of the public burdens. The constitution does not require a theoretical equality at the expense of substantial equity. . . . And in view of the grievous and oppressive results which would follow a levy and assessment upon the whole population of a certain sum per capita, a mode of taxation which, under the guise of equality, might, and probably would, be productive of intolerable hardship, it is clear that in the exercise of its right to levy poll taxes, the legislature must deviate to some extent from any such Procrustean standard of equality as this."

It must be apparent that a street poll tax imposed on minors or females, without regard to property or ability to pay, would be unjust and oppressive in the extreme. The burden of paying the tax for the entire household would ordinarily fall on the head of the family. Such a tax would lack both equality and uniformity and was never contemplated by the framers of the constitution. In *Thurston County v. Tenino Stone Quarries*, 44 Wash. 351, 87 Pac. 634, we held that the act of 1905, Laws 1905, page 297, imposing an annual road poll tax of two dollars on every male inhabitant of the state between the ages of twenty-one and fifty years, outside the limits of any incorporated city or town, did not violate any provision of our constitution. While the provision now invoked applies only to municipalities, yet a court should not readily presume that the constitution authorized or sanctioned one system of taxation within and another without the corporate limits of cities and towns. After a full consideration of the question presented, we are satisfied that the uniformity rule of taxation does not forbid a proper classification of the subjects of the tax, that the classification complained of is reasonable and proper, is sanctioned by usage, and violates no provision of the state constitution.

The judgment of the court below is therefore affirmed, and the case of the *State v. Ide, supra,* in so far as it conflicts with the views herein expressed, is overruled.

CROW, FULLERTON, and DUNBAR, JJ., concur.

MOUNT, J., dissents.