

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 07 2017
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Dec 7, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SPOKANE, a municipal corporation located in the County of Spokane, State of Washington, | ) ) ) ) | No. 93788-5 |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | En Banc |
| VICKI HORTON, Spokane County Assessor, and ROB CHASE, Spokane County Treasurer, and THE STATE OF WASHINGTON, by and through the Department of Revenue, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) ) ) | Filed DEC 0 7 2017 |

JOHNSON, J.—Article VII of the Washington Constitution requires that all taxes be uniform upon the same class of property. *See* CONST. art. VII, §§ 1, 9, 10. In February 2015, the city of Spokane (City) enacted an ordinance that granted a local property tax exemption to senior citizens and disabled veterans. Relying on a letter by the Department of Revenue (DOR) stating its belief that the ordinance violates article VII, the Spokane County assessor and treasurer (collectively County) refused to implement the ordinance. The issue in this case is whether the

City's ordinance violates article VII of the Washington Constitution's uniform property tax requirement.

The trial court ruled that the ordinance was constitutional and issued a writ requiring the County to apply it. DOR filed a motion to intervene, and both DOR and the County appealed the trial court's ruling. DOR was made a party for purposes of appeal. On appeal, the Court of Appeals reversed and held that the City's ordinance violated article VII, section 9 of the Washington Constitution.[1] *City of Spokane v. Horton*, 196 Wn. App. 85, 87, 380 P.3d 1278 (2016), *review granted*, 187 Wn.2d 1017, 390 P.3d 342 (2017). We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

In 2004, the City obtained voter approval for a street bond to pay for street projects. The City initially planned to complete the projects over 10 years, then retire the street bond under a 20-year retirement levy, a type of excess levy. *See* RCW 84.52.056. In 2014, the City completed the planned projects but still had 10 more years to pay off its remaining bond debt. The City proposed a new strategy to pay off the bonds, as well as extend the City's street program for another 11 years. The

---

[1] Because the Court of Appeals held that the ordinance was unconstitutional, it did not reach the issue raised by the County concerning whether the writ of mandamus was an appropriate remedy.

[2] The Washington State Association of Municipal Attorneys filed an amicus brief in support of the City.

proposal involved swapping out the $0.57 per $1,000 assessed value imposed under the City's excess bond levy with an equivalent $0.57 increase in the City's regular property tax rate. To do this, the City needed to raise its regular property tax levy by more than the statutory levy lid. *See* RCW 84.55.010, .050. In November 2014, the City referred a levy lid lift proposition to its voters and the voters approved. Acting on information provided by the Spokane County Assessor's Office, the City represented to voters that those who qualify for a tax exemption at the state level under RCW 84.36.381 would continue to be exempted from a portion of the new levy.

After voters approved the levy, however, the assessor's office informed the City that those qualified under the state tax exemption would not be exempt from the new levy.[3] The City then attempted to work with the assessor's office to resolve the issue until it was apparent the discussions were futile. On February 9, 2015, the City enacted its own fix, Ordinance C-35231, at issue in this case. The ordinance

---

[3] According to DOR, the distinction between a ballot proposition to raise the statutory limitation on a regular levy (a levy lid lift) and a ballot proposition to authorize a special or excess levy (an excess levy) has implications for persons receiving an exemption from taxes under the state tax exemption, RCW 84.36.381. The legislature exempts qualified persons under RCW 84.36.381 from paying excess levies, but requires them to pay regular property taxes at a reduced rate. RCW 84.36.381(5)(a)-(b); WAC 458-16A-140(2). DOR believes that the City proposed increasing the *regular* property tax rate by $0.57 per $1,000, and that therefore the exempted individuals' total property taxes would also increase. During oral argument, there seemed to be some confusion as to whether the ordinance was an excess levy or regular levy. *See* Wash. Supreme Court oral argument, *City of Spokane v. Horton*, No. 93788-5 (May 18, 2017), at 5 min., 25 sec., *audio recording* by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. The question of whether the ordinance was an excess levy or regular levy seems to play a role, although neither party squarely briefed this issue. Regardless, we address the issue as presented: whether the City has the power to grant a local tax exemption.

authorizes a citywide local property tax exemption for everyone who would qualify for the state exemption.

The County sought advice from DOR as to whether the ordinance was consistent with Washington's laws and constitution. Relying on a letter from DOR that stated the ordinance "creates an exemption that is not authorized under state law," the County refused to implement the ordinance. Clerk's Papers at 92.

The City then filed this lawsuit, seeking a writ of mandamus compelling the County to implement the ordinance. The Spokane County Superior Court granted the petition and issued the writ, ruling that the ordinance was constitutional and that the County breached its ministerial duty to implement it. After the writ was issued, DOR filed a motion to intervene to protect the interests of the State. The superior court made DOR a party for purposes of appeal.

The County and DOR appealed to Division Three of the Court of Appeals, which reversed in a divided opinion. The majority opinion held that the ordinance violated article VII, section 9 of the Washington Constitution because it resulted in a nonuniform tax. The City sought this court's review, and we granted it.

## ANALYSIS

To determine whether the ordinance here is constitutional, some background information on Washington's property tax system is necessary. Washington's property tax system is regulated under constitutional and statutory provisions. Article

4

VII of the Washington Constitution places restrictions on the assessment and taxation

of real property. Section 1 provides:

> All taxes shall be uniform upon the same class of property within the
> territorial limits of the authority levying the tax and shall be levied and
> collected for public purposes only. The word "property" as used herein
> shall mean and include everything, whether tangible or intangible,
> subject to ownership. All real estate shall constitute one class: *Provided,*
> That the legislature may tax mines and mineral resources and lands
> devoted to reforestation by either a yield tax or an ad valorem tax at such
> rate as it may fix, or by both. Such property as the legislature may by
> general laws provide shall be exempt from taxation.

CONST. art. VII, § 1. Section 1 provides that unless explicitly exempted from taxation

by the legislature, all real estate constitutes one class that must be taxed uniformly at

the same rate and the same ratio of market value to assessed value. *Boeing Co. v. King*

*County*, 75 Wn.2d 160, 449 P.2d 404 (1969). Tax uniformity is the "'highest and

most important'" of all requirements to our state tax system. *Inter Island Tel. Co.*

*v. San Juan County*, 125 Wn.2d 332, 334 883 P.2d 1380 (1994) (quoting *Savage v.*

*Pierce County*, 68 Wash. 623, 625, 123 P. 1088 (1912)). But absolute uniformity is

not required.

Section 2 limits the aggregate of all annual property tax levies on a particular

property to no more than one percent of the true and fair value of that property.

CONST. art. VII, § 2. However, section 2 allows taxing districts to impose additional levies above the regular amount if voters approve under specific conditions.[4]

The Washington Constitution also sets forth an explicit exception from uniformity in article VII, section 10:

> Notwithstanding the provisions of Article 7, section 1 (Amendment 14) and Article 7, section 2 (Amendment 17), the following tax exemption shall be allowed as to real property:
> The legislature shall have the power, by appropriate legislation, to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners. The legislature may place such restrictions and conditions upon the granting of such relief as it shall deem proper. Such restrictions and conditions may include, but are not limited to, the limiting of the relief to those property owners below a specific level of income and those fulfilling certain minimum residential requirements.

The legislature has exercised this power by exempting qualifying retired property owners from paying excess levies, and allowing the regular property tax rate to be less than full market value of their primary residence depending on their income. RCW 84.36.381(5)(a)-(b), (6); WAC 458-16A-140(2). The exemption applies to all property taxes, regardless of whether they are imposed by the State or by a local taxing jurisdiction. *See generally* RCW 84.36.381.

---

[4] A supermajority of voters must approve "excess" levies.

The Washington Constitution generally vests taxing power in the state legislature. CONST. art. I, § 1. Municipal corporations have no inherent right to levy taxes. *State ex rel. King County v. State Tax Comm'n*, 174 Wash. 668, 671, 26 P.2d 80 (1933). However, article VII permits the legislature to delegate tax powers to municipal corporations. Therefore, a local jurisdiction's taxing authority is derived from legislative grant specified by the Washington Constitution. CONST. art. VII, § 9. Article VII, section 9 provides:

> The legislature may vest the corporate authorities of cities . . . with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

The legislature has granted code cities property tax authority through a number of statutory provisions. Relevant here, RCW 35A.11.020 provides that "[w]ithin constitutional limitations, legislative bodies of code cities shall have within their territorial limits all powers of taxation for local purposes except those which are expressly preempted by the state as provided in RCW 66.08.120, 82.36.440, 48.14.020, and 48.14.080." (Reviser's note omitted.) RCW 35A.11.030 provides that such "[p]owers of . . . taxation" may be exercised "in the manner provided" by Title 35A RCW and the general laws of the state.

Under the state system, cities and other taxing districts may annually impose regular property tax levies on real and personal property within their geographic limits to meet their budgeted government operations. RCW 84.36.005; RCW 84.52.010-.020. Many constitutional and statutory constraints limit these jurisdictions' taxing powers. One restriction is the ability to increase regular levies from year to year. RCW 84.55.010. Under this "levy lid," taxing districts may levy only as much as in the preceding year plus an amount anticipated for new construction and improvements to property. If a taxing district wants to exceed the yearly limitation, it may do so by seeking "levy lid lift" approval from a majority of its voters. *See* RCW 84.55.050. While a levy lid lift allows the taxing district to increase its levy amount, it does not relieve the taxing district from any of the other statutory or constitutional limitations imposed on regular levies. RCW 84.55.050.

The Court of Appeals held that the City's ordinance was unconstitutional because it violates the uniformity requirement of article VII, section 9. It held that the ordinance violates uniformity because it applies two different regular property tax rates to real property in the city and creates different assessment ratios between real property owned by its exempted citizens and real property not owned by its exempted citizens. It further held that section 10 makes clear that only the legislature may grant exemptions, and that power has not been conferred on municipal corporations.

8

As stated earlier, article VII, section 9 of the Washington Constitution enables the legislature to vest municipal authorities with the power to tax for local purposes, subject to conditions and limitations as the constitution or the legislature may prescribe. *Carkonen v. Williams*, 76 Wn.2d 617, 627, 458 P.2d 280 (1969). The legislature exercised this authority when it prescribed code cities all powers of taxation "within constitutional limitations," RCW 35A.11.020, and "in the manner provided" by state law. RCW 35A.11.030.

The City argues that RCW 35A.11.020's broad delegation of "all powers of taxation" includes the power to exempt. It argues that "within constitutional limitations" cannot be interpreted to limit "all powers of taxation" to only the power to assess and collect. The City does not dispute that the levy lid lift is subject to uniformity requirements generally, but that perfect uniformity is not required under the constitution. Relying heavily on *Town of Tekoa v. Reilly*, 47 Wash. 202, 208, 91 P. 769 (1907) (*Tekoa*), the City argues that municipalities have the authority to grant reasonable tax exemptions that promote the "general welfare of the people." Judge Fearing embraced this argument in his dissent in the Court of Appeals opinion below.

*Tekoa* involved a case where the plaintiff challenged a local street poll tax, enacted in 1905, that was assessed only on men between the ages of 21 and 50 years. The poll tax applied based on residency; property ownership was not considered. The

plaintiff argued that an exemption granted to women and men under 21 and over 50

rendered the tax nonuniform, in violation of article VII, section 9. In upholding the

tax, this court reasoned that perfect uniformity of taxation is unattainable, stating that

in adopting the constitution, the people of this state

> did not propose to send the tax gatherer to the almshouse, the orphan asylum or the nursery, nor did they propose to lay a tax on the inmates of these institutions. In other words, they fully understood that if a street or road poll tax should be imposed, certain classes of persons would of necessity be exempt from the imposition.

*Tekoa*, 47 Wash. at 205.

The court noted that the constitution was "not the beginning of law." *Tekoa*, 47

Wash. at 206. It cited preconstitutional territorial law imposing a poll tax that

exempted indigent and mentally disabled persons and noted that the first legislature to

assemble under the state constitution imposed a poll tax with similar exemptions. The

court concluded that had the framers of the constitution intended to change the status

quo, they would have expressly said so:

> Are all these charter provisions to be held for naught, simply because the constitution contains the general altruistic declaration that taxes shall be uniform with respect to persons and property? Had the framers of the constitution been dissatisfied with the existing order of things would we not expect to find some more satisfactory evidence of their discontent?

*Tekoa*, 47 Wash. at 206-07. Significantly, the opinion stated that local taxes need not

be "'as nearly equal as a mathematical calculation can make them,'" but merely "'as

10

nearly equal as is consistent with the general welfare of the people, and an equitable distribution of the public burdens.'" *Tekoa*, 47 Wash. at 208 (quoting *City of Faribault v. Misener*, 20 Minn. 396, 398 (1874)). The court held that the poll tax did not violate article VII, section 9 of the Washington Constitution.

The City argues that *Tekoa* controls the outcome of this case because article VII, section 9 does not distinguish between poll taxes and property taxes. Judge Fearing's dissent below goes on to discuss that despite recent case law highlighting the importance of tax uniformity, no cases have specifically involved express tax exemptions. The dissent cited *Belas v. Kiga*, 135 Wn.2d 913, 959 P.2d 1037 (1998), as the most analogous case.

*Belas* involved a state referendum that limited the amount of an assessed valuation increase per year for rapidly appreciating property. This court invalidated the referendum on the basis of article VII, section 1, the provision addressing state, not city, taxation. Under the referendum, a formula established a valuation method where rapidly appreciating property owners did not pay the same rate for assessed valuation as other property owners and therefore the burden of taxation shifted to owners of property that did not experience large value increases. In *Belas*, DOR argued that the value averaging was valid under the legislature's constitutional power to grant tax exemptions. Unlike article VII, section 9, section 1 states that "[s]uch property as the legislature may by general laws provide shall be exempt from

11

taxation." This court in *Belas* reviewed the referendum's history and did not find any promotional materials describing the referendum as creating a tax exemption. Therefore, the court concluded that the measure was not a tax exemption. Significantly, the court noted that exemptions from taxation were permissible under article VII, section 1.

In response to this argument, DOR argues that "within constitutional limitations" means strict uniformity according to article VII, sections 1 and 9. The County and DOR argue that *Tekoa* is distinguishable from this case because *Tekoa* did not involve a property tax, which we have tended to require more or stricter uniformity. The County argues, and the Court of Appeals majority agreed, that historically poll taxes and property taxes have been treated differently. The Court of Appeals cited a law review article that noted two different standards for uniformity based on property taxes and nonproperty taxes:

> From the aspect of classification of the subjects of local taxation, the effect of the uniformity requirement of section nine is not the same in the case of local taxes on property as in the case of local taxes other than property taxes. As applied to property taxes which local subdivisions are empowered to levy, the "uniformity" required is that stated in section 1, article VII, because this section obviously applies to all taxes on property, whether levied by the state for state purposes or by a county, city, school district, or other subdivision for local purposes. . . . But as to taxes on persons, which are also within the contemplation of section nine, uniformity permits any reasonable classification of the subjects of taxation.

Alfred E. Harsch & George A. Shipman, *The Constitutional Aspects of Washington's Fiscal Crisis*, 33 WASH. L. REV. 225, 263-64 (1958) (footnote omitted). Respondents also assert that our case law supports a distinction between property and poll taxes.[5] DOR's Suppl. Br. at 18-19; Suppl. Br. of Resp'ts Spokane County at 8-9.

In addition, the County and DOR note that the taxes in *Tekoa* were taxes that the legislature expressly authorized towns to enact. *Tekoa*, 47 Wash. at 203 ("The validity of the legislative act under which the tax was imposed is the principal question raised by the appeal."). Here, the legislature has not expressly authorized a property tax exemption as it existed in *Tekoa*.

The dissent embraces the City's argument that the limited constitutional authority for the legislature to enact exemptions, coupled with the reasoning of *Tekoa* and the statutory delegation of taxing authority under RCW 35A.11.020, means that a city (and each city) possesses the power to enact property tax exemptions. This does not make sense for several reasons. First, as stated above, *Tekoa* analyzed a statute delegating authority to cities to enact a poll tax, which differs constitutionally from how uniformity requirements apply to property taxes. Second, poll taxes existed

---

[5] *See Covell v. City of Seattle*, 127 Wn.2d 874, 890, 905 P.2d 324 (1995); *MacLaren v. Ferry County*, 135 Wash. 517, 520, 238 P. 579 (1925); *Nipges v. Thornton*, 119 Wash. 464, 470, 206 P. 17 (1922); *Thurston County v. Tenino Stone Quarries, Inc.*, 44 Wash. 351, 354-56, 87 P. 634 (1906).

before statehood, while the property tax exemption authority at issue here was created by express constitutional amendment in 1966. The dissent identifies no cases citing *Tekoa* as supporting this broad implicit delegation of authority when it comes to property taxes.

And the dissent's view makes no sense in the context of constitutional uniformity requirements specific to property taxes. In the dissent's view, evidently, each city could choose, or not choose, to enact property tax exemptions within the constitutional limitations and potentially establish different eligibility standards, which could result in a patchwork system of property tax rules, thereby defeating the constitutional principles requiring uniformity of property taxes.

We agree with the Court of Appeals that *Tekoa* does not control. As the *Tekoa* court notes, it was significant that the poll tax at issue had preconstitutional roots. A similar poll tax had been enacted in 1881 in the territorial legislature, which exempted individuals the poll tax at issue sought to exempt. Here, the City's tax exemption ordinance lacks a similar history. Prior to the 1966 constitutional amendment that added article VII, section 10, there were no property exemptions similar to those at issue here.

Statutory interpretation also supports this conclusion. The City argues that RCW 35A.11.020 grants it all powers of taxation including exemption power. We disagree. The delegation of powers of taxation under RCW 35A.11.020 is specific and limited by the statute's express language. The statute provides that code cities have powers of taxation within constitutional limits. It does not, nor could it, expand or vary the constitution's uniformity requirements. While RCW 35A.11.020 is a grant of authority, the constitution expressly authorizes only the legislature the authority to enact an exception to the uniformity requirement. *See* CONST. art. VII, § 10 ("The legislature shall have the power . . . to grant . . . relief from the property tax."). Absent the constitutional provision giving the legislature limited authority to establish exemptions, the uniformity requirement prevents such action. No constitutional provision similar to article VII, section 10 authorizes a city to grant tax exemptions; therefore, a city does not possess the power to grant tax exemptions.

We affirm the Court of Appeals and find the ordinance unconstitutional.[6]

---

[6] The City argues that respondents had no authority to consider the legality of the ordinance and that we should reinstate the writ without deciding whether the ordinance is constitutional. While the ministerial nature of an official's duty is a prerequisite to obtaining a writ of mandamus, it does not compel us to grant a writ. *See Brown v. Owen*, 165 Wn.2d 706, 724, 206 P.3d 310 (2009) (mandamus proper to compel ministerial duty only because "[d]irecting the performance of a discretionary duty would 'usurp the authority of the coordinate branches of government'" (quoting *Walker v. Munro*, 124 Wn.2d 402, 410, 879 P.2d 920 (1994))). Even where a duty may exist in statute, we will not compel a state official to facilitate an unconstitutional act, which means the constitutionality of the underlying enactment needs to be addressed. *See Dep't of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 252, 804 P.2d 1241

_(signature)_

WE CONCUR:

_(signatures: Fairhurst, C.J.; Wiggins, J.; González, J.; Owens, J.; Yu, J.; McCloud, J.; Stephens, J.)_

_____

(1991) (reaching the issue of whether lease-purchase agreement violated state constitution's debt limit after deciding that the writ of mandamus was available and proper).

*City of Spokane v. Horton, et al.*

No. 93788-5

MADSEN, J. (dissenting)—I disagree with the majority's conclusion that the city

of Spokane (City), by exempting senior citizens, disabled veterans, and other low-income

tax payers from a municipal property tax, enacted an unconstitutionally nonuniform tax

and exceeded the taxing power constitutionally granted to municipalities in Washington.

Notably, the majority concludes that *Town of Tekoa v. Reilly*, 47 Wash. 202, 91 P.

769 (1907) does not apply to the facts of this case, and that a municipality may only

impose property taxes that are strictly uniform. However, *Tekoa* makes clear that taxes

imposed by a municipality, pursuant to article VII, section 9 of the Washington State

Constitution, need not be absolutely uniform so long as the taxes are "as nearly equal as

is consistent with the general welfare of the people." *Id.* at 208.

Moreover, I disagree with the majority's narrow interpretation of RCW

35A.11.020, in which the legislature grants code cities "all powers of taxation," subject to

constitutional limitation. In the majority's view, the constitution limits code cities to the

power to assess and collect taxes. However, this interpretation fails to account for article

VII, section 10, which grants the legislature the power to exempt retired property owners

from property tax, and this court's interpretation of the uniformity requirement. As we

held in *Tekoa*, the power to exempt classes of individuals from property taxes is constitutional, and the fact that section 10 specifically grants this power to the legislature is of no significant consequence.

Because I find that the property tax imposed by the City does not violate uniformity and the City may enact a property tax exemption, it is also necessary to determine whether the trial court appropriately issued a writ of mandamus. I would hold that mandamus was an appropriate remedy, and would affirm the trial court's order.

## Analysis

In Washington, the threshold issue in assessing the constitutionality of a tax is whether that tax is applied uniformly. *See* CONST. art. VII, § 1. Taxes imposed by a municipality are also subject to the uniformity requirement. *Id.* § 9.

In *Tekoa*, the court interpreted the article VII, section 9 uniformity requirement in a challenge to the constitutionality of a local poll tax imposed on males between the ages of 21 and 50 years old. 47 Wash. at 203. The tax explicitly exempted volunteer firemen, and implicitly exempted any person that was not a male between the ages of 21 and 50 years old. *Id.* at 203-04. In upholding the constitutionality of this tax, the court focused its analysis on the uniformity requirement in article VII, section 9, which states, "'[A]ll municipal corporations may be vested with authority to assess and collect taxes, and such taxes *shall be uniform in respect to persons and property* within the jurisdiction of the body levying the same.'" *Id.* at 203 (emphasis added) (quoting CONST. art. VII, § 9).

2

The *Tekoa* court held that exempting a class from a tax "violates no provision of the state constitution" if done in a reasonable and proper manner. *Id.* at 209. In support of its holding, the court explained:

> "Taxes are to be 'as nearly equal as may be'; not as nearly equal as a mathematical calculation can make them, but as nearly equal as is consistent with the general welfare of the people, and an equitable distribution of the public burdens."

*Id.* at 208 (quoting *City of Faribault v. Misener*, 20 Minn. 396, 398 (1874)). The court observed that perfect uniformity is procrustean, unattainable, and a "'baseless dream.'" *Id.* at 205, 208 (quoting *Edye v. Robertson*, 112 U.S. 580, 595, 5 S. Ct. 247, 28 L. Ed. 798 1884)). *Tekoa* makes clear that the legislature could not have intended the inequitable results that surely would flow from strict tax uniformity. *Id.* at 208 ("'The constitution does not require a theoretical equality at the expense of substantial equity. . . . [T]he legislature must deviate to some extent.'" (quoting *Misener*, 20 Minn. at 398-99)).

I would apply the holding in *Tekoa* that a reasonable exemption does not violate the uniformity requirement of article VII, section 9, to the tax enacted by the City. Interestingly, the majority concedes that "absolute uniformity is not required," yet reaches the opposite conclusion in this case. Majority at 6. The majority argues that *Tekoa* does not apply by distinguishing the tax in *Tekoa*, a poll tax, from the tax here, a property tax.[1]

---

[1] The majority is confused by *Tekoa*'s application in this case. This is unsurprising as the majority is so focused on *Tekoa*'s irrelevant distinguishing facts that it fails to comprehend *Tekoa*'s relevant precedential value. Specifically, the majority states:

3

This is unpersuasive. I agree with the general proposition that property taxes are dissimilar from poll taxes in some ways. However, the inherent differences between property taxes and poll taxes is not the issue. Rather, the issue is whether property taxes and poll taxes are treated differently with respect to the uniformity requirement in article VII, section 9. *Tekoa* focused its analysis on interpreting the uniformity requirement in article VII, section 9, which applies to both personal and property taxes. Moreover, there is no indication that the court limited its interpretation of article VII, section 9 to apply only to poll taxes. To that end, *Tekoa* answers in the negative, and the majority offers no case that overrules, either explicitly or sub silentio, that court's "reasonable uniformity" requirement. I see no reason to deviate from the analysis in *Tekoa*.

Despite *Tekoa*'s general proposition that a reasonable tax exemption does not destroy uniformity, the majority further concludes that the City, as a municipality, has no constitutional power to enact a tax exemption. The City must possess the statutory and constitutional right to enact property tax exemptions.

---

*Tekoa* analyzed a statute delegating authority to cities to enact a poll tax, which differs constitutionally from how uniformity requirements apply to property taxes. Second, poll taxes existed before statehood, while the property tax exemption authority at issue here was created by express constitutional amendment in 1966. Majority at 13-14. *Tekoa* is controlling because it defines "uniformity" under article VII, section 9, which is the same constitutional provision at issue here. While the majority's position latches onto the fact that *Tekoa* involved poll taxes rather than property taxes, section 9's plain text does not make any distinction between the two with regard to uniformity.

Finally, the majority attempts to discredit *Tekoa* by stating, "The dissent identifies no cases citing *Tekoa* as supporting this broad implicit delegation of authority when it comes to property taxes." *Id.* at 14. The precedential value of our cases are not contingent on citation in subsequent cases. Indeed, this court's decisions are controlling unless they have been subsequently overruled. *Tekoa* has endured no such negative treatment.

4

RCW 35A.11.020 states,

> [w]ithin constitutional limitations, legislative bodies of code cities shall have within their territorial limits *all powers of taxation* for local purposes.

(Emphasis added.) The majority reads "within constitutional limitations" narrowly and concludes that because a municipality's power to exempt taxes is not expressly provided in the constitution, it must be a limitation on code cities. The majority points to article VII, section 10, which states that the legislature has the power to "to grant to retired property owners relief from the property tax on the real property occupied as a residence by those owners." CONST. art. VII, § 10. Because section 10 specifically mentions that the legislature holds the exemption power, and no provision in the constitution explicitly grants municipalities a similar power, the majority believes that property tax exemptions are an exclusive power of the legislature.

However, the legislature did not intend such a narrow reading of this statutory provision. Indeed, the legislature delegated authority to designated cities in the broadest possible terms.

> The purpose and policy of this title is to confer upon two optional classes of cities created hereby the broadest powers of local self-government consistent with the Constitution of this state. . . . All grants of municipal power to municipalities electing to be governed under the provisions of this title, whether the grant is in specific terms or in general terms, shall be liberally construed in favor of the municipality.

RCW 35A.01.010. Following the exhortation of liberal construction, as the legislature intended, we find "within constitutional limitations" must be interpreted to include all constitutional acts, not just those explicitly granted to municipalities. The power to

5

exempt certain individuals from property taxes is constitutional—article VII, section 10 grants that authority to the legislature, and nothing in the constitution prohibits the legislature from delegating its section 10 exemption power.

By granting "all powers of taxation"[2] to code cities, the legislature's intent is clear—code cities are to have all taxing powers at the local level that the legislature possesses at the state level. The City persuasively argues this point by demonstrating that the legislature's intent has historically been clear when granting taxing authority to the various classes of cities. *See* Suppl. Br. of Pet'r at 12. For example, the legislature specifically grants second-class cities the power to assess, levy, and collect property taxes. RCW 35.23.440(46). An unclassified city is granted the authority to levy and collect property taxes. RCW 35.30.010(3).

Unlike second-class and unclassified cities, the legislature does not limit a code city's taxing power. Rather, the legislature intended to grant code cities all powers of taxation at the local level that the legislature possessed at the state level—including the power to exempt property taxes.

Moreover, narrowly interpreting "within constitutional limitations" to mean that code cities enjoy only the power to assess and collect taxes conflicts with *Tekoa*. *Tekoa*'s general proposition was that taxes need not be strictly uniform, and that exemptions are constitutional if enacted to avoid unjust or inequitable results. By narrowly reading RCW 35.30.020, the majority reduces a city's authority to assessing and collecting property

---

[2] RCW 35A.11.020.

6

taxes, and strict uniformity becomes inevitable. But in order to assess and collect taxes with "reasonable uniformity," as *Tekoa* recognized, the power to exempt certain classes of individuals from property taxes consistent with the general welfare of the people and to avoid injustice is inherent. The majority appears to believe that a municipality has the power to provide exemptions to all types of taxes except for property taxes.

I disagree with the majority, and would hold that the City has the constitutional and statutory right to exempt certain classes of individuals from property taxes.

Finally, I would hold that a writ of mandamus was an appropriate remedy in this case, and I would reinstate the trial court's writ. A writ of mandamus is appropriate if three elements are met:

> (1) the party subject to the writ is under a clear duty to act, (2) the applicant has no "plain, speedy and adequate remedy in the ordinary course of law," and (3) the applicant is "beneficially interested."

*Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003) (citations omitted) (quoting RCW 7.16.170). The trial court found that the City established each element. *See* Clerk's Papers at 481.

First, the party subject to the writ must have a "clear duty to act." *Eugster,* 118 Wn. App at 402. Specifically, this element requires a ministerial duty—a duty that vests no independent discretion or judgment in the party subject to the writ. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010).

Here, the respondents, Vicki Horton and Rob Chase, are subject to the writ in their respective capacities as Spokane County assessor and Spokane County treasurer.

7

Pursuant to *State el rel. Godfrey v. Turner*, a county treasurer is a "subordinate ministerial officer who has no discretion, but must perform the duty of collecting taxes as they are certified to him by the assessment roll placed in his hands for collection." 113 Wash. 214, 219, 193 P. 715 (1920); RCW 36.29.100 ("All special assessments and special taxation for local improvements assessed on property benefited shall be collected by the city treasurer."). Moreover, "[t]he action of the assessor in setting rates is primarily ministerial." *Hoppe v. King County*, 95 Wn.2d 332, 338, 622 P.2d 845 (1980). Consequently, Horton and Chase are under a clear duty to perform their ministerial functions—Horton must assess the tax rates, and Chase must collect taxes pursuant to those assessments. Neither Horton nor Chase may exercise any discretion or judgment in the administration of their respective duties.

The second element required for mandamus is that no alternative "'plain, speedy, and adequate remedy in the ordinary course of the law'" exists. *Eugster*, 118 Wn. App. at 403 (quoting *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001)). In other words, mandamus will not lie if the party requesting the writ has an alternative and adequate remedy besides mandamus. *Gregoire*, 168 Wn.2d at 625. However for a remedy to be considered inadequate "'[t]here must be something in the nature of the action or proceeding that makes it apparent to this court that it will not be able to protect the rights of the litigants or afford them adequate redress, otherwise than through the exercise of this extraordinary jurisdiction.'" *Id.* (internal quotation marks

8

omitted) (quoting *State ex rel. O'Brien v. Police Court*, 14 Wn.2d 340, 347-48, 128 P.2d 332 (1942)).

Horton and Chase argue that the City did have an adequate alternative remedy—a declaratory judgment pursuant to chapter 7.24 RCW, the Uniform Declaratory Judgment Act (UDJA). Under the UDJA, a "declaratory judgment" is an order that establishes the "rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. In contrast, a "writ of mandamus" is an order compelling performance of a public official's existing duties. *Walker v. Munro*, 124 Wn.2d 402, 408, 879 P.2d 920 (1994). What Horton and Chase fail to recognize is that an "ordinance will be presumed to be constitutional, and the burden of showing otherwise rests heavily upon the challenger." *Homes Unlimited, Inc. v. City of Seattle*, 90 Wn.2d 154, 158, 579 P.2d 1331 (1978).

Here, the City passed an ordinance exempting certain individuals from a local property tax. Horton and Chase refused to assess and collect property taxes in accord with the City's ordinance. Appropriately, the City requested a writ of mandamus from the trial court in order to compel Horton and Chase to comply with the City's ordinance and to perform their assessment and collection duties. The City correctly did not request a declaratory judgment because the City's ordinance is presumed constitutional, and a declaration of constitutionality is not a prerequisite to obtaining a writ of mandamus. The City sought a remedy to compel Horton and Chase to comply with their ministerial duties, not establish the constitutionality of its ordinance. Unlike a writ of mandamus, a

9

declaratory judgment does not directly compel performance, which is the remedy sought by the City.

Additionally, the issue of constitutionality was raised as a defense to the "duty" element required for a writ of mandamus. Requiring a declaratory judgment every time the constitutionality of a statute is asserted as a defense would severely restrict parties from obtaining mandamus in the future. In effect, parties would be required to seek declaratory judgment regarding constitutionality of underlying issues as a threshold determination before they may request a writ of mandamus from the court. A declaratory judgment does not constitute an adequate alternative remedy.

The third element requires that the party requesting mandamus be "beneficially interested." Here, the City implemented the ordinance that Horton and Chase refuse to comply with. As such, the City has a beneficial interest in ensuring that public officials, burdened with the task of implementing legislation, do, in fact, implement the City's legislative acts.

Because I would hold that the City's ordinance is constitutional and that mandamus is an appropriate remedy, I would affirm the trial court. Accordingly, I respectfully dissent.

_____
Madsen, J.